STATE of Tennessee, Appellee,

v.

Frank Daniel BURTON, Sr., David Kenneth Burton, and Robert Kenneth Jones, Appellants.

Court of Criminal Appeals of Tennessee, at Nashville.

Feb. 11, 1988.

Permission to Appeal Denied by Supreme Court May 2, 1988.

David Bass, Carthage, for Frank Daniel Burton, Sr.

James B. Dance, Carthage, for David Kenneth Burton.

Randy Wakefield, Carthage, for Kenneth Hayes.

W.J. Michael Cody, Atty. Gen. & Reporter, Marian Nabors Banks, Asst. Atty. Gen., Nashville, Tom P. Thompson, Dist. Atty. Gen., Hartsville, Connie Robertson, Asst. Dist. Atty. Gen., Lebanon, John Wooten, Asst. Dist. Atty. Gen., Hartsville, for appellee.

## OPINION

JONES, Judge.

The defendants, Frank Daniel Burton, Sr., David Kenneth Burton, and Kenneth Hayes, were convicted of two counts of robbery with a deadly weapon by a jury of their peers. The trial court sentenced the defendant Frank Daniel Burton, Sr., to confinement in the Department of Correction for a period of fifteen (15) years in each case as a Range I especially mitigated offender in one case and a standard offender in the other case. The trial court sentenced the defendants David Kenneth Burton and Kenneth Hayes to confinement in the Department of Correction for a period of thirty-five (35) years in each case as Range II persistent offenders. The trial court ordered that all of the sentences were to be served concurrently.

In this Court the defendants have raised a multitude of issues.

The defendant Frank Daniel Burton, Sr., contends that the trial court committed error in (a) denying his pretrial motion to suppress, (b) denying his pretrial motion for a severance, (c) permitting the victims to make in-court identifications and (d) permitting the assistant district attorney gen-

eral to cross-examine him about a prior exculpatory statement and his post-arrest silence.

The defendant David Kenneth Burton contends the trial court committed error in (a) denying his pretrial motion to suppress, (b) denying his pretrial motion for a severance, (c) denying his pretrial motion for the arrest histories of state witnesses, (d) permitting the prosecutor listed on the indictment to testify as the State's last witness, (e) denying the defendant's motion for mistrial when it was brought to the attention of the jury that the defendants had escaped from jail; (f) denying the defendant's motion for a mistrial when the assistant district attorney general mentioned that he was guilty after defense counsel waived argument; and (g) denying a motion for continuance on the ground he was seen by the prospective jurors on the morning of trial in handcuffs as he was led to the courtroom by a deputy sheriff.

The defendant, Kenneth Hayes, contends the trial court committed error in (a) denying his pretrial motion to suppress (b) denying his pretrial motion for a severance, (c) denying his pretrial motion for the arrest histories of state witnesses, (d) denying his pretrial motion for a change of venue, (e) denying his pretrial motion for individual voir dire, (f) denying his pretrial motion to disqualify the district attorney general and his staff from prosecuting these cases against the defendants, (g) denying the defendant's motion for a mistrial when it was brought to the attention of the jury that the defendants had escaped from jail, (h) permitting the victims to make in-court identifications, (i) permitting the prosecutor listed on the indictment to testify as the State's last witness, (j) denying a motion for continuance on the ground he was seen by the prospective jurors on the morning of trial being brought into the courthouse with his two co-defendants, and (k) he challenges the sufficiency of the convicting evidence.

## SUFFICIENCY OF THE EVIDENCE

■ During the early morning hours of September 23, 1985, the two victims, Rebecca L. Thomas and Jacque Daly, were traveling eastwardly on Interstate 40 when they decided to stop at the Buffalo Valley Rest Area, which is located in Smith County. As Ms. Thomas, who was driving, prepared to exit the automobile, a masked man, later identified as David Kenneth Burton, opened her door, placed the barrel of a sawed-off shotgun in her face, and ordered her to slide across the front seat. The gunman then beckoned a second masked man, saying "Bro get in the back." The second man, later identified as Frank Daniel Burton, Sr., entered the vehicle from the passenger side, and sat on the back seat. David Burton then gave his brother, Frank, the shotgun, and David pulled a knife from his pocket.

The gunman demanded the keys to the automobile. They told the victims they planned to take their money, drive them to an undisclosed location, and leave them. Ms. Thomas had placed the keys under her right leg, and, fearing that the gunman would harm them or take their lives, told the gunman she did not know what happened to the keys because their appearance startled her. When the two gunmen searched for the keys, a third masked man, later identified as Kenneth Hayes, leaned inside the vehicle and began wrapping a pair of nunchucks around Ms. Thomas' neck. When she grabbed the nunchucks, Frank Burton struck her from the rear with the shotgun. When she reacted to this blow, she felt the nunchucks choking her.

When the gunmen were unable to locate the keys to the automobile, they tied the victim's hands, took Ms. Thomas' purse, overnight bag, and a quilt as well as Mr. Daly's wallet, jacket, hat, and a case containing numerous audio cassettes. The gunmen were seen leaving in an older model white Ford van, which had "rusty spots" on the body. The gunmen took the ramp to go westbound on Interstate 40.

The victims reported the robbery to law enforcement officers. The Putnam County Sheriff's Department and the Smith County Sheriff's Department notified law enforcement agencies in the surrounding counties

that an armed robbery had occurred, and provided these agencies with a description of the van as well as the gunmen. Approximately one hour after the robbery a van matching the description contained in the broadcast was discovered on a parking lot in Alexandria, Tennessee. A DeKalb County deputy sheriff ordered the occupants to exit the van. The defendants subsequently exited the van.

The defendants left the doors to the van open. When the deputy sheriff looked inside the van, he saw a pipe which was described as the type used to smoke marijuana. The deputy also saw the handle and trigger guard of a gun, which he thought was a pistol, protruding from beneath a board inside the van. When the deputy retrieved the gun, he discovered it was a sawed-off shotgun. A subsequent search of the van revealed pocket knives, a pair of nunchucks, shotgun shells, bandannas similar to those worn by the gunmen, Ms. Thomas's purse, and Mr. Daly's billfold. Both of the Burtons had knives in their pockets when searched.

The defendants and the van were returned to Smith County. The victims identified the van later that morning.

The victims made in-court identifications of the defendants as the three gunmen. They also identified their personal property, the sawed-off shotgun, and the nunchucks found inside the van occupied by the defendants.

Frank Daniel Burton, Sr., testified in support of his defense. He related that he and his brother, Kenneth, drank beer most of Sunday afternoon. That night they went "bar hopping" and he became highly intoxicated. He also consumed a Quaalude, which eventually made him become very sleepy. He went to his brother's van and fell asleep.

Burton stated he was awakened by his brother, who told him the van was out of gas and asked if he knew whether there was a service station open in Alexandria. He noticed for the first time that there two individuals in the van he did not know. He subsequently went back to sleep. A short time later he was awakened by the police,

and subsequently arrested for armed robbery. He was unaware a robbery had occurred. He noticed that the fourth person, whom he had never met, was not present.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn.R.App.P. 13(e). This rule is applicable to findings of guilt based upon direct as well as circumstantial evidence. *Farmer v. State,* 208 Tenn. 75, 343 S.W.2d 895, 897 (1961); *State v. Brown,* 551 S.W.2d 329, 331 (Tenn.1977).

In determining the sufficiency of the evidence we do not reweigh or reevaluate the evidence. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978); *State v. Hatchett,* 560 S.W.2d 627, 630 (Tenn.1978); *State v. Grace,* 493 S.W.2d 474, 476 (Tenn.1973); *Braziel v. State,* 529 S.W.2d 501, 505 (Tenn.Crim.App.1975). Nor may be substitute our inferences for those drawn by the trier of fact in circumstantial evidence cases. *Liakas v. State,* 199 Tenn. 298, 286 S.W.2d 856, 859 (1956); *Farmer v. State,* 574 S.W.2d 49, 51 (Tenn.Crim.App.1978). To the contrary, we are required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Cabbage,* supra.

Questions concerning the credibility of witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. *State v. Cabbage,* supra; *State v. Grace,* supra; *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn.1982). In *Grace* our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d at 476.

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, *State v. Grace,* supra, the accused must demonstrate to

this Court that the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle,* supra. This Court will not disturb a verdict of guilt, which has been approved by the trial judge, on the facts unless the evidence contained in the record is insufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *State v. Tuggle,* supra.

We are of the opinion there is sufficient evidence, direct as well as circumstantial, contained in the record from which a rational trier of fact can conclude that all of the defendants are guilty of robbery with a deadly weapon. Tenn.R.App.P. 13(e); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Tuggle,* supra.

This issue is without merit.

## DENIAL OF MOTION TO SUPPRESS

All three of the defendants filed pretrial motions to suppress, as evidence, the items seized from the van by the DeKalb County deputy sheriff. The defendants alleged that (a) they were illegally arrested and (b) the warrantless search and seizure by the deputy sheriff was unreasonable and violative of both the Federal and State constitutional guarantees against unreasonable searches and seizures. The trial court granted the defendants an evidentiary hearing on the issues raised in the respective motions to suppress. The trial court subsequently denied all of the motions.

Counsel espoused the view that the filing of a motion to suppress per se shifts the burden to the prosecution for the purpose of establishing the reasonableness of a warrantless search. Later, when the assistant district attorney general questioned the standing of Frank Daniel Burton, Sr., and Kenneth Hayes, to challenge the search and subsequent seizure of the items from the van, defense counsel expressed the view that the defendants didn't have to establish standing. According to counsel, the prosecution has "the burden to prove that we don't have standing, and it's our position that we do." Of course, this is not the procedure followed in this jurisdiction

nor is it the procedure followed in the federal system.

The first procedural step an accused must take when he seeks to suppress evidence which is alleged to have been seized in violation of the federal and state constitutions, is to file a proper motion prior to trial, Tenn.R.Crim.P. 12(b)(3), and bring the motion to the attention of the trial court so that the court can rule on the motion prior to trial. See *State v. Burtis,* 664 S.W.2d 305, 310 (Tenn.Crim.App.1983).

■ A motion to suppress, like any other motion, is required to state the grounds upon which it is predicated with particularity. Tenn.R.Crim.P. 47. Thus, before an accused is entitled to an evidentiary hearing, the motion "must be sufficiently definite, specific, detailed and non-conjectural, to enable the court to conclude a substantial claim ... [is] presented." *State v. Davidson,* 606 S.W.2d 293, 297 (Tenn.Crim.App.1980). See *State v. Howell,* 672 S.W.2d 442, 444 (Tenn.Crim.App.1984). The motions filed by the defendants in the case *sub judice* do not comport with the standards enunciated in Rule 47 and our decision in *Davidson;* and the defendants were not entitled, as a matter of law, to an evidentiary hearing. See *State v. Howell,* supra.

■ When the allegations contained in a motion to suppress entitle the accused to an evidentiary hearing, the accused has the initial burden of proving by a preponderance of the evidence (a) he has a legitimate expectation of privacy in the place or property from which the items sought to be suppressed were seized, *State v. Roberge,* 642 S.W.2d 716, 718 (Tenn.1982); *State v. White,* 635 S.W.2d 396, 399 (Tenn.Crim.App.1982), (b) the identity of the items he seeks to suppress as evidence, *State v. Johnson,* 705 S.W.2d 681, 683 (Tenn.Crim.App.1985), and (c) the items were seized without a warrant. Once the accused establishes these prerequisites, the burden then shifts to the prosecution. See *State v. Johnson,* supra. Since warrantless searches and seizures are presumed to be unreasonable, the prosecution has the bur-

den of establishing by a preponderance of the evidence the search and resulting seizure were justified pursuant to one of the recognized exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 442, 454–455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971); *State v. Hughes*, 544 S.W.2d 99, 101 (Tenn.1976), app. after rem. 588 S.W.2d 296, 301 (Tenn. 1979); *State v. Crabtree*, 655 S.W.2d 173, 179 (Tenn.Crim.App.1983). See *State v. Cross*, 700 S.W.2d 576, 577 (Tenn.Crim. App.1985).

■ We agree with the State that the defendants Frank Daniel Burton, Sr., and Kenneth Hayes did not establish a reasonable expectation of privacy in the van, and, therefore, did not have standing to contest the search and resulting seizure of items that were contained in the van. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 59 L.Ed.2d 387 (1978); *Griffin v. State*, 604 S.W.2d 40, 43 (Tenn.1980); *State v. Roberage*, supra at 718–719.

A review of the evidence adduced at the suppression hearing is necessary for a determination as to whether or not the defendant David Kenneth Burton, who was established as the owner of the van, was entitled to have the evidence seized from his van suppressed.

The DeKalb County Sheriff's Department received a report that an armed robbery had occurred at approximately 2:30 a.m. on the morning of September 23, 1985. According to the report, the robbery was committed by three males, two with mustaches, who were armed with a sawed-off shotgun, knives and nunchucks. The men left the scene of the robbery in an old van which was white in color and had rust spots on it. It was thought to be a Ford.

The Alexandria, Tennessee, night watchman advised the DeKalb County Sheriff's Department that a vehicle matching the description of the van in the radio report was on the parking lot of a local business. Deputy David Johnson responded to the call. When he arrived, he ordered the occupants to exit the van. The three defendants then exited the van.

While the night watchman and a private citizen, armed with Johnson's service revolver, kept the defendants under observation, Johnson went to the van and looked inside through the doors that the defendant left open. He first observed a pipe used to smoke marijuana on the floor of the van. He next observed the handle of a gun protruding from beneath a quilt. He removed the gun and discovered it was a .12 gauge sawed-off shotgun. A subsequent search of the van on the parking lot revealed Ms. Thomas' purse as well as a small bag containing women's accessories.

A search of the defendants revealed a watch in Hayes's front pocket, two knives in the left, front pocket of Frank Burton's pants, and a knife in the left, back pocket of David Burton's pants.

■ We are of the opinion Deputy Johnson had probable cause to arrest the defendants for the offense of robbery with a deadly weapon when he arrived on the parking lot. *Wadley v. State*, 634 S.W.2d 658, 663 (Tenn.Crim.App.1982). Johnson had information from another law enforcement agency that an armed robbery had occurred less than an hour before the van was discovered on the parking lot, the van matched the unique description of the vehicle used by the perpetrators of the offense to flee the scene, and there were three males in the van, the same number of gunmen implicated in the robbery. In *Wadley v. State*, supra, this Court said:

An officer may make a lawful arrest without an arrest warrant when a felony has been committed and the officer has reasonable cause to believe the person arrested has committed it. T.C.A. § 40–803 (1975) [now T.C.A. § 40–7–103]; *West v. State*, 221 Tenn. 178, 425 S.W.2d 602 (1968). Reasonable or probable cause is such as would justify a reasonable man to believe that the person was guilty of the felony. *Davis v. State*, 2 Tenn.Cr.App. 297, 453 S.W.2d 438 (1970). It is not necessary that the arresting officer have absolute assurance of guilt. *Grey v. State*, 542 S.W.2d 102 (Tenn.Cr. App.1976). 634 S.W.2d at 663.

■ Once the defendants had been arrested, Deputy Johnson was authorized by law to search their person incident to their arrest, *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *State v. Banner*, 685 S.W.2d 298, 301 (Tenn.Crim.App.1984); and he was further authorized to search the interior of the van incident to the arrests of the defendants. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *Wadley v. State*, supra.

We conclude the trial court properly denied the defendant's motion to suppress. The State clearly established the items sought to be suppressed were seized pursuant to a recognized exception to the warrant requirements of both the Federal and Tennessee constitutions.

This issue is without merit.

## SEVERANCE OF DEFENDANTS

All three defendants contend the trial court committed error of prejudicial dimensions in denying their respective motions for severance.

The defendant Frank Daniel Burton, Jr., contends the denial of his motion enured to his prejudice because he was denied the testimony of his two co-defendants and the proof was weaker against him than his co-defendants.

The defendant David Kenneth Burton simply contends that he was entitled to a severance because he was the only one of the defendants having standing to contest the legality of the search and resulting seizure of items contained in his van.

The defendant Kenneth Hayes argues that he was prejudiced because he was denied the opportunity to call his co-defendants as witnesses; and allowing him to be tried with the other defendants, who had been identified before trial.

Whether there should be a severance of defendants and a separate trial as to one or more co-defendants is a matter which rests within the sound discretion of the trial court; and this Court will not interfere with the exercise of this discretion absent clear abuse. *Hunter v. State*, 222 Tenn.

672, 681, 440 S.W.2d 1, 6 (1969); *State v. Coleman*, 619 S.W.2d 112, 116 (Tenn.1981); *State v. Wiseman*, 643 S.W.2d 354, 362 (Tenn.Crim.App.1982); *State v. Hopper*, 695 S.W.2d 530 (Tenn.Crim.App.1985). The test for determining whether a trial court has abused its discretion in denying a severance is "whether or not the defendant was clearly prejudiced in his defense by being jointly tried with his co-defendants." *Hunter v. State*, supra, 222 Tenn. at 681, 440 S.W.2d at 6. See *State v. Lunati*, 665 S.W.2d 739, 745–746 (Tenn.Crim.App.1983), cert. denied 466 U.S. 938, 104 S.Ct. 1913, 80 L.Ed.2d 461 (1984). The record must demonstrate that "the defendant was clearly prejudiced to the point that the trial court's discretion ended and the granting of [a] severance became a judicial duty," *Hunter v. State*, supra, 222 Tenn. at 682, 440 S.W. 2d at 6, before an accused is entitled to a reversal of his conviction.

We are of the opinion the trial court did not abuse its discretion in denying the defendants' respective motions for a severance. *Hunter v. State*, supra; *Brady v. State*, 584 S.W.2d 245, 251 (Tenn.Crim.App. 1979); *State v. Wiseman*, supra; *State v. Hopper*, supra. The defendants have failed to demonstrate in this Court how they were prejudiced by the denial of their motions.

■ Contrary to the assertion of Frank Daniel Burton, Jr., the evidence adduced at trial clearly demonstrates his guilt. He was the easiest of the three to identify because his bandanna mask kept falling from his face.

■ The arguments of Frank Burton and Kenneth Hayes to the effect they have been denied the testimony of their respective co-defendants is totally lacking in merit. There is nothing in the record to illustrate that the co-defendants were willing to testify in their behalf; and, if they did agree to testify on their behalf, there is nothing in the record to tell us what their testimony would be if called to the stand. See *State v. Wiseman*, supra.

■ The contention of David Kenneth Burton is likewise lacking in merit. The

trial court and this Court have ruled the search of his van was justified; and the fact he was the only defendant having standing to challenge the search and resulting seizure is irrelevant to a resolution of this issue.

This issue is without merit.

## ADMISSIBILITY OF IN–COURT IDENTIFICATIONS

The defendants Frank Daniel Burton, Sr., and Kenneth Hayes contend the trial court committed error of prejudicial dimensions in permitting the in-court identifications of the two victims.

This issue has been waived. First, neither defendant filed a pretrial motion to suppress the in-court identifications of the victims. In order to preserve an issue regarding a witness's in-court identification the accused must file a pretrial motion to suppress the testimony. Tenn.R.Crim.P. 12(b)(3). *State v. Wilson,* 611 S.W.2d 843, 847 (Tenn.Crim.App.1980); *State v. McCray,* 614 S.W.2d 90, 94 (Tenn.Crim. App.1981); *State v. Mason,* 623 S.W.2d 126, 127 (Tenn.Crim.App.1981); *State v. Barber,* 625 S.W.2d 291, 293–294 (Tenn. Crim.App.1981); *State v. Taylor,* 628 S.W. 2d 42, 45 (Tenn.Crim.App.1981). The failure to challenge the issue pretrial results in the waiver of the issue. Tenn.R.Crim.P. 12(f). Second, the defendants did not interpose a contemporaneous objection to the in-court identifications of the witnesses. Tenn.R.App.P. 36(a). See *Houston v. State,* 567 S.W.2d 485, 488 (Tenn.Crim.App. 1978); *State v. Wilson,* supra.

This issue is without merit.

## DISCOVERABILITY OF ARREST HISTORIES

The defendants David Kenneth Burton and Kenneth Hayes contend the trial court committed error of prejudicial dimensions in denying their respective motions asking for the entry of an order requiring the State to furnish them with copies of the arrest records of state witnesses. The defendants argue they are entitled to the information as a matter of statutory right. T.C.A. § 40–32–101(c)(3) provides:

"Release of arrest histories of a defendant or potential witness in a criminal proceeding to an attorney of record in the proceeding shall be made to such attorney upon request."

The appellate courts of this State have not squarely addressed the provisions of T.C.A. § 40–32–101(c)(3) as a pretrial remedy for the discovery of arrest histories.

In *State v. Baker,* 623 S.W.2d 132 (Tenn. Crim.App.1981), the accused sought a new trial on the grounds of newly discovered evidence. The newly discovered evidence consisted of the post-trial discovery of a state witness's conviction for the sale of marijuana. The defendant argued he was entitled to relief because he demanded the revelation of the convictions of the state's witnesses prior to trial. Apparently the defendant sought the information by a request for discovery. The court affirmed the judgment of the trial court denying the defendant relief. In ruling the Court said:

We know of no authority under the Tennessee Rules of Criminal Procedure or in the decisional law of this State which requires such revelation by the State. There is no showing the defendant, prior to trial, made any independent effort to secure this information.

As the trial judge pointed out, the name of the witness was known to the defendant, the index to the minutes of the court reflected the name, and the matter could have been located as easily by the defendant as by the State. Neither the discovery demand for this information nor T.C.A. § 40–2109(c)(3) [now T.C.A. § 40–32–101] establishes a predicate upon which to grant the relief sought. 623 S.W.2d at 133.

In *State v. Workman,* 667 S.W.2d 44, 51 (Tenn.1984), the trial court denied the accused's request that the State secure and deliver to defense counsel the arrest histories of the state's witnesses. The trial court denied the request. In ruling the Supreme Court said: "[W]e see no error in the trial court's action, since the State has no duty, either under the Tennessee Rules of Criminal Procedure or by decisional law

in this state, to provide such information to the defendant. *See State v. Baker,* 623 S.W.2d 132, 133 (Tenn.Cr.App.1981)." 667 S.W.2d at 51. As can be seen, the Supreme Court did not mention or allude to the applicable statute, T.C.A. § 40–32–101(c)(3). This Court's opinion in *State v. Norris,* 684 S.W.2d 650 (Tenn.Crim.App.1984), which is cited in both the State's as well as the defendant's briefs, does not aid us in the resolution of this issue.

This Court, like the trial court, is required to follow the decisions of our Supreme Court. *Barger v. Brock,* 535 S.W.2d 337, 340–341 (Tenn.1976); *State v. Davis,* 654 S.W.2d 688, 690 (Tenn.Crim.App.1983). This Court does not have the authority to modify, revise, modernize or overrule a rule created by our Supreme Court or an interpretation of the laws of this State. *Barger v. Brock,* supra; *Bloodworth v. Stuart,* 221 Tenn. 567, 572, 428 S.W.2d 786, 789 (1968). See *Richardson v. Johnson,* 60 Tenn.App. 129, 136, 444 S.W.2d 708, 711 (1969).

In view of the Supreme Court's decision in *State v. Workman,* supra, the trial court properly denied the defendants' request for the arrest history of state witnesses. Any change in this rule must be made by our Supreme Court, not this Court.

This issue is without merit.

## ORDER OF PROSECUTOR'S TESTIMONY

■ Sheriff Bane, the prosecutor listed on the indictment, was called as the State's last witness. The defendants objected to his testimony on the theory that the prosecutor listed on an indictment must testify as the State's first witness or the prosecutor cannot be called as a witness. Defense counsel acknowledged that Sheriff Bane was under the rule and had been outside the courtroom during the entire trial. The trial court overruled the objection and permitted the sheriff to testify. The defendants David Kenneth Burton and Kenneth Hayes contend the trial court committed error of prejudicial dimensions in permitting the witness to testify. We disagree.

Contrary to the beliefs of defense counsel, there is not now nor has there ever been a rule in this jurisdiction which requires that the prosecutor listed on the indictment, who has been outside the courtroom until called as a witness, must testify as the State's first witness. Counsel's reliance on *Smartt v. State,* 112 Tenn. 539, 80 S.W. 586 (1904), and *Mothershed v. State,* 578 S.W.2d 96 (Tenn.Crim.App.1978), are misplaced. In *Smartt* and *Mothershed,* a witness was permitted to remain in the courtroom to assist the district attorney general in the management of the State's case. In both cases the witness was a police officer. In each case the court observed that when a witness is permitted to remain in the courtroom to assist in the management of the State's case, the witness should be required to testify as the first witness.

As heretofore indicated, counsel acknowledged that Sheriff Bane had been under the rule and outside the courtroom until called as a witness. Thus, the rule announced in *Smartt* and *Mothershed* did not apply in the case *sub judice.*

This issue is without merit.

## EVIDENCE OF THE DEFENDANTS' ESCAPE

The defendants, David Kenneth Burton and Kenneth Hayes, contend the trial court committed error of prejudicial dimensions in denying their respective motions for a mistrial after it had been brought to the attention of the jury the defendants had escaped from jail.

It appears the defendants attempted to escape on one occasion, and both escaped on another occasion while awaiting trial for these offenses. When the assistant district attorney general attempted to introduce evidence of their escape, the defendants interposed a contemporaneous objection. Defense counsel argued that the defendants had been indicted for the offense of escape and it would constitute proof of other crimes to permit the introduction of such testimony. The trial court, apparently concerned about the introduction of proof of other crimes, sustained the objection and

ruled the State could not introduce evidence of the escape. The trial court expressed the view that evidence of flight is limited to instances occurring "immediately after arrest or when someone is confronted by the law enforcement officers, and they make the flight at that time. Escape to me is a completely different matter."

When the assistant district attorney general continued the direct examination of Sheriff Bane, the sheriff was asked if the physical appearance of the defendants had changed after their arrest. Sheriff Bane answered by saying: "You mean they ran off", an answer completely unresponsive to the question.

■■■ In this jurisdiction evidence that an accused has escaped from custody, or attempted to escape from custody, after being charged with a criminal offense is admissible for the purpose of establishing the accused's guilt, consciousness of guilt, or knowledge of guilt. *Craig v. State*, 2 Tenn.Crim.App. 510, 516, 455 S.W.2d 190, 193 (1970); *Mitchell v. State*, 3 Tenn.Crim. App. 153, 161, 458 S.W.2d 630, 633 (1970); *Chapple v. State*, 528 S.W.2d 62, 63 (Tenn. Crim.App.1975); *Buckingham v. State*, 540 S.W.2d 660, 665 (Tenn.Crim.App.1976), cert. denied 429 U.S. 1049, 97 S.Ct. 759, 50 L.Ed. 2d 764 (1977); *State v. Taylor*, 661 S.W.2d 695, 698 (Tenn.Crim.App.1983). The stage of the proceedings or the length of time expiring between the commission of the offense and the escape, or attempt to escape, is irrelevant and has no bearing on the admissibility of such evidence. *Craig v. State*, supra. Evidence of an escape, or attempt to escape, is admissible if it occurs shortly after arrest, *State v. Taylor*, supra [defendant attempted to escape from booking room shortly after his arrest]; incident to a preliminary hearing, *Craig v. State*, supra [the defendant escaped en route to his preliminary hearing]; while awaiting trial, *Mitchell v. State*, supra, *Chapple v. State*, supra, *Buckingham v. State*, supra; or during the trial on the merits. *Chapple v. State*, supra.

Contrary to the ruling of the trial court, the evidence of the defendants' escape as well as the attempt to escape after having

been indicted for these two offenses was admissible. Consequently, the witness's reference to the escape did not constitute error.

This issue is without merit.

## DENIAL OF MOTION FOR CONTINUANCE

■■■ The defendants David Kenneth Burton and Kenneth Hayes contend the trial court committed error of prejudicial dimensions in denying their respective motions for a continuance on the morning this case was set for trial.

Burton and Hayes both argue that on the morning of trial the patrol cars used to transport the defendants to the Smith County Courthouse were parked in front of the courthouse. Shortly before the commencement of voir dire the defendants, all handcuffed, shackled and heavily guarded, were led through the lobby of the courthouse, up the stairs, and into the courtroom in full view of the prospective jurors.

Our review of the record reveals that the defendants didn't offer any evidence of what did occur when the defendants were brought into the courthouse. All that appears in the record are the statements of counsel, and counsel did not see what occurred. Counsel's remarks contain such qualifying phrases as "I think", "I believe", and "I understand." Statements made by counsel during the course of a hearing or trial are not evidence of the facts recited by counsel. *Trotter v. State*, 508 S.W.2d 808, 809 (Tenn.Crim.App.1974); *Davis v. State*, 673 S.W.2d 171, 173 (Tenn. Crim.App.1984). The same is true with regard to the recitation of facts and the arguments contained in a brief or similar pleading. *Price v. Mercury Supply Co., Inc.*, 682 S.W.2d 924, 929 n. 5 (Tenn.App. 1984).

This issue was waived when the defendants failed to introduce competent evidence of what did in fact occur. Tenn.R.App.P. 36(a). Also, when the record transmitted to this Court is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, this

Court is precluded from considering the issue; *Groseclose v. State*, 615 S.W.2d 142, 147 (Tenn.1983); *State v. Jones*, 623 S.W.2d 129, 131 (Tenn.Crim.App.1981); and we must conclusively presume the trial court's ruling on the motion was correct. *State v. Jones*, supra; *State v. Baron*, 659 S.W.2d 811, 815 (Tenn.Crim.App.1983); *State v. Taylor*, 669 S.W.2d 694, 699 (Tenn.Crim. App.1983).

This issue is without merit.

## CROSS–EXAMINATION OF FRANK DANIEL BURTON, SR.

The defendant, Frank Daniel Burton, Sr., contends his constitutional rights were violated when the assistant district attorney general questioned him about an exculpatory statement he made to a deputy sheriff and his post-arrest silence.

The defendant did not interpose a contemporaneous objection when Deputy Johnson testified and related the substance of the exculpatory statement. Nor did he object when the assistant district attorney general cross-examined him about his statement and failure to tell the officers that there had been a fourth person in the van a short time before his arrest. Thus this issue has been waived. Tenn.R.App.P. 36(a). See *State v. Pritchett*, 621 S.W.2d 127, 135 (Tenn.1981); *Franklin v. State*, 1 Tenn.Crim.App. 248, 254, 437 S.W.2d 260, 263 (1968); *Pyburn v. State*, 539 S.W.2d 835, 843 (Tenn.Crim.App.1976); *State v. Foust*, 625 S.W.2d 287, 290 (Tenn.Crim. App.1981); *State v. Leach*, 684 S.W.2d 655, 658 (Tenn.Crim.App.1984).

This issue is without merit.

## CHANGE OF VENUE

The defendant Kenneth Hayes contends the trial court committed error of prejudicial dimensions in denying his motion for a change in venue. The defendant predicates his argument on what he describes as "extensive" media coverage and the fact the defendant "was displayed to the jury in shackles the morning of trial." We disagree.

The "extensive media coverage" described by counsel consists of three newspaper articles appearing in *The Carthage Courier*. The first article appeared in the September 26, 1985, edition on page 2. This article gave a brief overview of the offense. The second article appeared in the October 10, 1985 edition of the *Courier*. This article appeared on page 20 and is rather obscure. It reported the attempted escape. The third article appeared in the *Courier* on March 13, 1986. It appeared on the first page of the newspaper and reported the escape of Burton and Hayes from the Smith County Jail. This case was tried on April 15 and 16, 1986.

Whether the venue of a criminal prosecution should be removed to another county is a matter which addresses itself to the sound discretion of the trial court, and this Court will not interfere with the trial court's exercise of its discretion in these matters absent clear abuse. *State v. Melson*, 638 S.W.2d 342, 360 (Tenn.1982), cert. denied 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983); *State v. Zagorski*, 701 S.W.2d 808, 815 (Tenn.1985); *Lackey v. State*, 578 S.W.2d 101, 104 (Tenn.Crim.App. 1978); *State v. Grooms*, 653 S.W.2d 271, 273 (Tenn.Crim.App.1983); *State v. Browning*, 666 S.W.2d 80, 86 (Tenn.Crim.App. 1983); *State v. Sammons*, 656 S.W.2d 862, 870 (Tenn.Crim.App.1982).

Before an accused is entitled to a reversal of his conviction on the ground the trial court denied his motion for change of venue, the accused must demonstrate to this Court that the jurors who actually sat in judgment of him were biased and/or prejudiced. *State v. Melson*, supra; *Lackey v. State*, supra at 103; *State v. Stapleton*, 638 S.W.2d 850, 856 (Tenn.Crim.App.1982); *State v. Browning*, supra. In the case *sub judice*, the defendant has failed to demonstrate that the jurors were biased and/or prejudiced. Moreover, the record transmitted to this Court will not permit us to determine whether the jurors were biased and/or prejudiced. The voir dire proceedings are not included in this record. *State v. Browning*, supra. Thus, we must presume that the jury empaneled to sit in judgment of the defendant was fair and

impartial; and the defendant did not encounter any difficulty in the selection of the jury. *State v. Browning*, supra.

We are of the opinion the trial court did not abuse its discretion in denying the defendant's motion for a change of venue. *State v. Grooms*, supra; *State v. Sammons*, supra. See *State v. Browning*, supra.

This issue is without merit.

## INDIVIDUAL VOIR DIRE OF PROSPECTIVE JURORS

■ The defendant Kenneth Hayes contends that the trial court committed error in denying his pretrial motion for individual voir dire examination of the prospective jurors.

Rule 24(a), Tenn.R.Crim.P., provides in part that "[t]he court, upon motion of a party or on its own motion, *may* direct that any portion of the questioning of a prospective juror be conducted out of the presence of the tentatively selected jurors and other prospective jurors." [Emphasis added.] The word may, as used in this rule, is permissive rather than obligatory. See *Lewis v. State*, 40 Tenn. 127, 150 (1859); *Black v. State*, 154 Tenn. 88, 93, 290 S.W. 20, 21 (1927). Thus, the question of whether prospective jurors should be questioned individually addresses itself to the sound discretion of the trial court, and an appellate court will not interfere with the trial court's exercise of its discretion absent clear abuse. *State v. Coe*, 655 S.W.2d 903, 910–911 (Tenn.1983), cert. denied 464 U.S. 1063, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984); *State v. Simon*, 635 S.W.2d 498, 506 (Tenn. 1982); *State v. Black*, 618 S.W.2d 526, 527 (Tenn.Crim.App.1981); *State v. Plummer*, 658 S.W.2d 141, 143 (Tenn.Crim.App.1983). However, when it is believed there is a significant possibility that prospective jurors have been exposed to potentially prejudicial material, individual voir dire is mandated with respect to each prospective juror's exposure to the prejudicial material. *Sommerville v. State*, 521 S.W.2d 792, 797 (Tenn.1975); *State v. Claybrook*, 736 S.W.2d 95, 98–101 (Tenn.1987).

■ In the case *sub judice* the defendant complained about three articles appearing in the local newspaper incident to his motion for a change of venue. However, the record transmitted to this Court is insufficient for us to determine whether the trial court abused its discretion or what prejudice, if any, enured to the defendant as a result of the denial of individual voir dire because it does not contain the voir dire proceedings. Thus, we must presume that the trial court did not abuse its discretion in denying the defendant's motion for individual voir dire; and, further, no prejudice enured to the defendant as a result of the denial of the motion.

This issue is without merit.

## DISQUALIFICATION OF DISTRICT ATTORNEY GENERAL AND STAFF

■ The defendant Kenneth Hayes filed a pretrial motion seeking to disqualify the district attorney general as well as all members of his staff from prosecuting the defendants. The defendant argues that neither the district attorney general nor members of his staff could prosecute the defendant fairly because Hayes had stolen the district attorney general's truck after escaping from jail.

We are of the opinion that neither the district attorney general nor members of his staff were disqualified because of the occurrence in question. See *United States v. Kember*, 685 F.2d 451, 458–459 (D.C.Cir. 1982). However, if for some reason the district attorney general should be disqualified as a result of his interest, certainly his entire staff was not disqualified. *Mattress v. State*, 564 S.W.2d 678 (Tenn.Crim.App. 1977); *United States v. Caggiano*, 660 F.2d 184 (6th Cir.1981).

The defendants were prosecuted by two assistant district attorney generals. The district attorney general himself did not participate in the trial of this case.

This issue is without merit.

## ARGUMENT

■ The defendant David Kenneth Burton waived argument. In response to the

arguments of counsel for Frank Daniel Burton and Kenneth Hayes, the assistant district attorney general posed the question, "Did you hear Mr. Wakefield or Mr. Bass tell you just a few minutes ago about the identification in that purse? Did that just fly in there? No, it didn't fly in there, because it was taken by these three men right over here." Counsel for the defendant David Kenneth Burton immediately moved for a mistrial on the ground the assistant district attorney general had commented upon the guilt of his client after his client had waived closing argument.

We do not think that the comment of the assistant district attorney general constituted error in the context of this case. It was impossible for the assistant district attorney general to make reference to the defendants in any other manner. Furthermore, this was the only mention of this defendant in the rebuttal argument of the assistant district attorney general.

This issue is without merit.

The judgments of the trial court are affirmed.

DUNCAN, P.J., and DAUGHTREY, J., concur.