**STATE of Tennessee, Appellee,**

v.

**Bobbie Louise RASPBERRY, Appellant.**

Court of Criminal Appeals of Tennessee,
Jackson.

Sept. 29, 1993.

Permission to Appeal Denied by
Supreme Court March 28, 1994.

W. Jeffery Fagan, Camden, for appellant.

Charles W. Burson, Atty. Gen. and Ellen H. Pollack, Asst. Atty. Gen., Nashville, G. Robert Radford, Dist. Atty. Gen. and John W. Overton, Jr., Vicki S. Snyder, Asst. Dist. Attys. Gen., Savannah, for appellee.

*OPINION*

BIRCH, Judge.

The Circuit Court of Henry County entered judgment upon the jury verdict that convicted Bobbie Louise Raspberry, the defendant, of second-degree murder in the death of her husband, Joe Donald Raspberry.

The trial court sentenced her to the Department of Correction for twenty-years and assessed a $5,000 fine.

We have before us Raspberry's appeal of right. She contends that the convicting evidence was insufficient, as a matter of law, to support the verdict reached by the jury. Additionally, she insists that the trial court erred in refusing to grant the following pretrial motions:

1. for change of venue;
2. for recusal of the trial judge; and
3. for an individual voir dire.

We find no reversible error and affirm the judgment of the trial court.

## I

The record establishes that on Tuesday, September 2, 1991, W.R. Scammerhorn of the Tennessee Highway Patrol arrived on the scene of a car wreck. He found the car fully engulfed in flames after having struck a tree at the base of an embankment. According to Scammerhorn, the car had left the road at a ninety-degree angle. This heightened his interest, he said, because a car usually leaves the road at a forty-five-degree angle. Once the fire was doused, Scammerhorn observed the remains of a human inside the car. The head was under the passenger side of the dashboard and the legs were in the front bucket seats. Scammerhorn smelled gasoline on portions of unburned clothing found under the body.

Deputy Terry Williams of the Henry County Sheriff's Department contacted Darin Lohman, the person to whom the car was registered. Lohman denied owning the car and stated that it belonged either to Edward Barch or Joe Donald Raspberry. Lohman gave Williams the phone number of Raspberry's daughter, Jessica Raspberry. According to Williams, Lohman called him back and asked the extent to which the body in the car had been burned. Williams testified that in their initial conversation, he did not tell Lohman that the car had burned or that a body had been recovered from inside the car.

Investigators determined that the burned body was that of Joe Donald Raspberry. They informed Jessica Raspberry, and she went to her father's trailer to notify her stepmother, Bobbie Raspberry, of the accident. According to Jessica Raspberry, Bobbie Raspberry took about twenty minutes to get ready to go to the hospital. Once at the hospital, Scammerhorn told Bobbie Raspberry that her husband was dead. He said she cried softly at the news and, shortly thereafter, said she intended to have the body cremated as soon as possible.

Postmortem examination of the body revealed that the victim had sustained a gunshot wound to the head. Gretal Harlan, M.D., testified that the victim died from the wound and had been dead at least twelve hours before being placed in the car and burned. The victim's blood-alcohol content was .42% at the time of his death. Harlan testified that the victim was either in a coma or asleep when shot.

According to the defendant, on Sunday, August 31, 1991, she and her husband attended a Labor Day celebration at the Amvets club. They arrived around 5:30 p.m. and stayed until 3 a.m. After leaving the Amvets club, the couple ate breakfast at a local restaurant. They returned home around 4:30 a.m.

From this point, the defendant gave investigators three different versions of the events leading up to the car fire on September 2, 1991.

Initially, Raspberry told police that she and her husband spent a quiet Labor Day at home. She said that the victim had been drinking steadily all day, and that they went to bed early that night. She said Tuesday was spent the same way until the victim left the house about 7:30 p.m. to borrow some money in order to get to Tucson, Arizona. She said she never saw him again.

The second version of the defendant's story was related to Robert L. Pollard, a criminal investigator with the Tennessee State Fire Marshal, and William T. Yates, an investigator with the Tennessee Highway Patrol. Initially, she stuck to her original story, even after the officers told her that the victim had been shot and killed at least twelve hours prior to the fire. When Pollard suggested other possibilities, such as suicide,

the defendant changed her story. Raspberry then said that at 11 a.m. on Monday, she went to Kentucky to do some shopping. She said she left the victim lying on the bed watching television. When she returned around 2 p.m., he was dead of an apparent suicide. She said that he had been very worried about the Arizona charges.[1]

Raspberry then told Pollard and Yates that she stayed with her husband's body all day Monday and Tuesday. She said that she eventually realized that she had to act because the body was turning black. She said that she dragged the body out of the trailer and into the car. She drove around for several hours and then staged the accident. She said she lit the fire before she sent the car down the embankment.

Pollard testified that he doubted that the defendant could have moved the body by herself. Additionally, Pollard testified that the fire was lit after the car had come to rest at the bottom of the embankment.

In her third version, Raspberry told police that upon returning home from shopping, she found the victim dead in the bed. As she turned around, she saw a stranger in the living room. She said that shortly thereafter, Darin Lohman arrived at the trailer and said to her, "I am sorry Bobbie, it has got to be this way"—apparently referring to the Arizona charges.[2] The stranger and Raspberry remained in the trailer until Tuesday evening. That evening, Darin Lohman, the stranger, and Raspberry loaded the body and bags containing the bedsheets into the car. They threw the bags and gun off a bridge and staged the accident. After the fire was lit, Lohman told Raspberry to walk home. Throughout this entire episode, Lohman told Raspberry that if she said anything to the authorities, her family would suffer.

Raspberry told the investigators that her husband had never abused her, and in all her conversations with police she consistently denied killing Joe Donald Raspberry.

**1.** Joe Donald Raspberry and Les Lohman, Darin Lohman's father, had charges pending against them in Pima County, Arizona. The two were arrested in possession of large quantities of drugs and cash. Les Lohman was incarcerated in Florida on similar charges during the fall of 1991.

## II

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832 (Tenn.1978). This court must view the evidence in the light most favorable to the state and can set aside Raspberry's conviction only if the evidence is insufficient for any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. Tenn.R.App.P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Williams*, 657 S.W.2d 405 (Tenn.1983).

A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913 (Tenn.1982).

It is not the function of this court to reweigh evidence adduced at a criminal trial. A guilty verdict, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in testimony in favor of the theory of the state. *State v. Hatchett*, 560 S.W.2d 627 (Tenn.1978).

After viewing all of the evidence in the light most favorable to the state, we hold that any rational trier of fact could have found the essential elements of second-degree murder committed by the defendant beyond a reasonable doubt. We hold, therefore, that the convicting evidence is legally sufficient.

## III

The defendant contends that the trial court erred prejudicially by refusing to grant her motion for change of venue. In support

**2.** According to the defendant, Joe Donald Raspberry intended to testify against Les Lohman in an Arizona prosecution.

of the motion, the defendant alleged that a local radio broadcast included details of the defendant's attempt to escape from jail approximately two days before trial. The defendant argues that the information permeated the local community to the extent that a fair trial in Henry County could not be obtained.

■ The question of venue change is a matter that is within the sound discretion of the trial court, and an appellate court will not interfere with the trial court's exercise of its discretion in this regard absent a clear showing of abuse. *State v. Teel,* 793 S.W.2d 236 (Tenn.1990).

■ Before a defendant is entitled to have a conviction reversed on the ground that the trial court refused to grant a defendant's motion for change of venue, the defendant must demonstrate to the appellate court that the jurors who actually sat in judgment were biased or prejudiced. *State v. Melson,* 638 S.W.2d 342 (Tenn.1982); *State v. Burton,* 751 S.W.2d 440 (Tenn.Crim.App.1988).

Through the record before us, the defendant has failed in her efforts to demonstrate that any juror who heard the case was biased or prejudiced.

To the contrary, we have every indication that the jury actually empaneled in this cause was fair and impartial. Perhaps the best indication of this is the fact that the parties encountered little or no difficulty in selecting a jury.[3]

Accordingly, there is no abuse of discretion, and the ruling of the trial court in this regard was correct.

## IV

Two issues remain, they are:
1. recusal of the trial judge; and
2. individual voir dire.

■ We apply the "abuse of discretion" standard to each of these issues. Specifically, the decision as to each of these matters rests within the sound discretion of the trial court, and we will uphold the trial court's

ruling in this regard unless the defendant establishes the existence of a clear abuse of discretion. *Caruthers v. State,* 814 S.W.2d 64 (Tenn.Crim.App.1991); *Burton,* 751 S.W.2d at 440.

We have thoroughly examined the record, and we have painstakingly considered each of the aforementioned issues. The defendant has failed to establish, as to either, a clear abuse of discretion by the trial court. Accordingly, these issues are without merit.

The trial court's judgment is affirmed.

WADE and WHITE, JJ., concur.

---

3. The peremptory challenge slips which ordinarily indicate who excused whom are not included in the record before us.