IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 8, 2002

## STATE OF TENNESSEE v. MICHAEL ELVIS GREEN

**Direct Appeal from the Circuit Court for Hardeman County**
**No. 6368     Jon Kerry Blackwood, Judge**

_____

**No. W2001-00455-CCA-R3-CD  - Filed March 8, 2002**

_____

A Hardeman County jury found the defendant guilty of rape.  Four issues are raised on appeal: (1) whether there was sufficient evidence to support the conviction; (2) whether the trial court erred in denying the defendant a continuance; (3) whether evidence of the defendant's escape from jail was improperly admitted; and (4) whether the trial court should have charged the jury as to sexual battery, statutory rape, and Class B misdemeanor assault as  lesser-included offenses of rape.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Scottie O. Wilkes, Memphis, Tennessee, for the appellant, Michael Elvis Green.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and James W. Freeland, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The victim, S.T., who was 13 years old at the time of the offense, testified the defendant entered her home and raped her.[1]  She stated she resided in an apartment in Bolivar with her grandmother; her grandmother's husband, Cornel Robinson; and a nine-year-old cousin.  According to the victim, in the early afternoon of April 15, 1999, she received a phone call from a male who would not give his name.  She said she refused to speak to him.

---

[1] It is the policy of this court to refer to a child victim of a sexual offense by his or her initials.

That evening, her grandmother spent the night elsewhere. The victim said she was awakened at 11:00 p.m. by a telephone call from a man who identified himself as Demetrius, her cousin. She said the caller ID indicated the call originated from the home of Lillie Boden, a relative who lived nearby.[2] The caller asked her to open the door to the apartment so he could use the restroom. The victim testified she complied with the request and found the defendant, whom she did not know, at the door.

She stated the defendant pushed her inside the apartment and threw her on the couch. She said the defendant attempted to put on a condom, but it fell to the floor when she pushed him. According to the victim, the defendant tore off her boxer shorts and forced her to have intercourse. She testified she told the defendant "No, no, no" and screamed for Cornel Robinson. Robinson and the victim's young cousin were both sleeping; neither of them woke during the offense. According to the victim, Robinson had been drinking before he went to sleep and was, therefore, difficult to awaken.

The victim stated the defendant threatened to take her to his van and put a gun on her if she did not stop screaming. She said the defendant fled from the apartment when she screamed louder. She estimated the defendant was in the apartment approximately five to ten minutes.

The victim testified she called the hospital and then the police, who arrived within ten minutes. The victim testified the defendant telephoned her again after the police arrived and asked her not to call the police. She informed him she had already called them. She denied speaking with the defendant prior to the date of the incident.

Sergeant Eddie Henson testified he arrived at the victim's apartment at 1:02 a.m. He found the victim standing in front of the apartment holding a telephone. According to Henson, the victim handed him the phone after she said, "This is him." Henson stated a man on the other end of the telephone asked if Joe Jones was there, and hung up when Henson identified himself as a police officer. Henson said he answered the phone when it rang again about a minute later. Henson testified the caller, who identified himself as Mark Murphy, sounded like the same man. Henson stated the caller told him he was looking for Joe Jones, whom he claimed to have dropped off at the victim's apartment. Henson said the caller mentioned he heard a rumor that the victim accused Joe Jones of sexual assault. Henson said the two calls were received at 1:06 and 1:07 a.m. Henson also testified Cornel Robinson was awakened by the victim about 20 minutes after Henson arrived at the apartment. Henson stated Robinson appeared "groggy."

---

[2] Lillie Boden testified her name was Lillie Boden Brown; however, other witnesses repeatedly referred to her as Lillie Boden during their testimony. The indictment listing her as a witness indicated her name was "Lillie Mae Bowden," while the transcript shows her name as "Lillie Boden."

A registered nurse testified she collected samples, including a vaginal swab, from the victim as part of a rape kit. She said the victim was "frightened and crying." She also stated the victim was not bleeding and had no abrasions or bruises. TBI forensic scientist Constance Howard testified DNA from sperm collected from the vaginal swab matched the defendant's DNA.

Officer Patrick Jordan testified he examined the caller ID at the victim's apartment. It recorded a telephone call from the Lillie Boden residence at 11:30 p.m. and two calls from the Earle Neely residence at 1:06 and 1:07 a.m. Officer Jordan stated he found an unopened condom under a window in the victim's living room.

Earle Neely, the defendant's stepfather, testified the defendant was residing with him in nearby Whiteville on the date of the offense. Neely stated he was not familiar with anyone named Mark Murphy or Joe Jones.

Lillie Boden testified that between 11:00 p.m and 12:00 a.m. on the evening of the offense, she allowed the defendant to use her telephone. She stated the defendant walked toward the victim's home after he finished using her telephone.

Frances Turner, a jailer at the Hardeman County Jail, testified the defendant ran out of the jail while she was booking him. Turner stated the defendant was returned to the jail by a police officer 30 to 45 minutes later.[3]

The 22-year-old defendant testified he had been speaking with the victim every other day for a period of two weeks before the incident, but he had never seen her before that night. He said the victim indicated she wanted to "hook up" with him. He stated he was at home when he received a phone call from the victim, who asked him to come to her home around midnight after her grandmother left for work. The defendant said the victim called him again after her grandmother left, and he traveled to Bolivar.

He testified he called the victim twice for directions to her home after he arrived in Bolivar. The defendant denied using Lillie Boden's telephone. He testified the victim was standing at the door of the apartment when he arrived. He stated they entered the apartment, where they sat on the couch and had a conversation about having sex. According to the defendant, he and the victim proceeded to have consensual sex using a condom. The defendant testified his encounter with the victim lasted less than seven minutes, after which he immediately left the apartment. He said he briefly greeted Lillie Boden as he walked to his car. He testified he then went straight home, took a shower, and went to sleep. He denied telephoning the victim's apartment after the incident. He also testified he walked out of the Hardeman County Jail while he was being booked because officers were laughing at him.

---

[3] The defendant was convicted of felony escape prior to his trial on the rape charge.

Captain Bill Irons of the Bolivar Police Department testified that following the defendant's arrest, the defendant denied having sex with the victim.

The jury found the defendant guilty of rape.

# I. SUFFICIENCY OF THE EVIDENCE

The defendant argues the evidence presented by the state was insufficient to prove he forced the victim to have sex. We do not agree.

## A. Standard of Review

In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *Id.*; State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

## B. Analysis

The defendant was charged with rape under that portion of the statute prohibiting the "unlawful sexual penetration" of the victim by "force or coercion." Tenn. Code Ann. § 39-13-503(a)(1). In the instant case, both the victim and the defendant testified they had sexual intercourse. Therefore, the pivotal issue for the jury was whether the intercourse was forced or consensual. The victim testified the defendant was a stranger who entered her home and penetrated her by force, while the defendant testified the victim consented to sex. The victim testified the defendant gained entry to her home by posing as a relative in a phone call made just prior to the incident. The caller ID in the victim's apartment showed a call was received from Lillie Boden's home at 11:30 p.m., and Boden testified the defendant made a call from her home at approximately that time. The defendant denied making such a call. The state's proof also established two phone calls were placed from the defendant's residence shortly after the offense by a caller who knew the victim had alleged a sexual assault. The defendant also denied having made those phone calls, although he admitted going home immediately following his encounter with the victim. The jury, as was its prerogative,

believed the victim and disbelieved the defendant. We are without authority to re-weigh the evidence presented to the jury. The proof was sufficient to support the jury's verdict.

## II. CONTINUANCE

The defendant complains the trial court erred by failing to grant a continuance in order to allow counsel to interview a potential witness, who might establish that the victim and the defendant had a "friendly relationship." The record shows the defendant filed a written motion on the date of trial requesting a continuance to allow defense counsel to interview the witness, who allegedly was in Minnesota. Neither the motion nor the record indicates what efforts were made by counsel to locate or interview the witness prior to the filing of the motion. Most importantly, the record does not contain a transcript of a hearing nor the trial court's ruling on the motion. The trial transcript indicates the trial court gave the parties the opportunity to address preliminary matters prior to the start of the trial, and defense counsel made no mention of the motion.

It is the requesting party's responsibility to bring a motion to the attention of the trial court. Tenn. R. App. P. 36(a); State v. Hall, 8 S.W.3d 593, 603 (Tenn. 1999). Furthermore, it is the duty of the appellant to provide a record which conveys a fair, accurate and complete account of what transpired with regard to the issues which form the basis of the appeal. Tenn. R. App. P. 24(b); State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999). The issue has been waived.

## III. PROOF OF ESCAPE

The defendant contends proof of his escape from the Hardeman County Jail was improperly admitted. The defendant maintains the probative value of the evidence is outweighed by the danger of unfair prejudice. We do not agree.

Proof of an escape or attempted escape from custody after being charged is relevant to show guilt, consciousness of guilt, or guilty knowledge. State v. Burton, 751 S.W. 2d 440, 450 (Tenn. Crim. App. 1988); *see also* State v. Zagorski, 701 S.W.2d 808, 813 (Tenn. 1985). We concur with the trial court that the proof of the defendant's escape from the jail during booking is indicative of the defendant's consciousness of guilt, and that the probative value of this evidence was not outweighed by the danger of unfair prejudice to the defendant. This issue is without merit.

## IV. LESSER-INCLUDED OFFENSES

Defendant contends the trial court instructed the jury only as to the indicted charge of rape and erred in failing to charge the jury as to sexual battery, statutory rape, and Class B misdemeanor assault as lesser-included offenses.

We initially note the defendant has failed to include the jury instructions in the appellate record. As previously stated, it is the duty of the accused to provide a proper record of what transpired with regard to the issues raised on appeal. Tenn. R. App. P. 24(b); *see* Taylor, 992 S.W.2d at 944. However, the trial transcript indicates the trial court advised that it would charge the jury only as to rape, and the state does not allege waiver. We will address this issue.

The trial court has a duty to instruct the jury on any lesser-included offenses of the charged offense when such instruction is supported by the evidence, regardless of whether the defendant has requested such an instruction. State v. Bowles, 52 S.W.3d 69, 74 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 464 (Tenn. 1999). The standard for an appellate court's review of a trial court's charge to the jury regarding lesser-included offenses is de novo with no presumption of correctness. Bowles, 52 S.W.3d at 74.

In Burns, our state supreme court stated an offense is a lesser-included offense if:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or
(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

> (1) a different mental state indicating a lesser kind of culpability; and/or
> (2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

6 S.W.3d at 466-67.

If an offense is found to be a lesser-included offense, the court must next determine whether the evidence justified a jury instruction on the offense. Bowles, 52 S.W.3d at 75. This second step requires the reviewing court to determine (1) whether there is evidence that "reasonable minds" could accept to establish the lesser-included offense, and (2) whether the evidence is "legally sufficient" to support a conviction for the lesser-included offense. State v. Ely, 48 S.W.3d 710, 722 (Tenn. 2001); Burns, 6 S.W.3d at 469. If the evidence justifies an instruction, the failure to charge the offense is error even though the evidence was also sufficient to support the greater offense. Burns, 6 S.W.3d at 472.

The evidence, not the theories of the parties, determines whether an instruction on a lesser-included offense should be given. State v. Allen, ___ S.W.3d ___, ___, No. E1998-00416-SC-R11-CD, slip op. at 5 (Tenn. Feb. 22, 2002, at Knoxville). Furthermore, the decision to convict on a lesser-included offense should not be taken from the jury simply because the element distinguishing the greater offense from the lesser offense is "uncontroverted." *Id.* at ___, slip op. at 6-7.

## A. Sexual Battery and Assault

Rape by force or coercion has two elements: (1) unlawful sexual penetration, and (2) force or coercion used to accomplish the act. Tenn. Code Ann. § 39-13-503(a)(1). Sexual penetration includes sexual intercourse along with various other sex acts which cause an intrusion, however slight, into the body. Tenn. Code Ann. § 39-13-501(7). However, the statutory definition of rape does not mandate that any of the acts be committed for the purpose of sexual arousal or gratification. *See id.*

The offense of sexual battery includes "unlawful sexual contact" accompanied by "force or coercion." *See* Tenn. Code Ann. § 39-13-505(a)(1). The statutory definition of sexual contact includes intentional touching of a victim's intimate parts which can be reasonably construed as being for the purpose of sexual arousal or gratification. *See* Tenn. Code Ann. § 39-13-501(6).

In Bowles, our state supreme court concluded that sexual battery was a lesser-included offense of aggravated rape under Burns part (b). 52 S.W.3d at 77. The Bowles court reasoned that while sexual battery requires the act to be done for sexual arousal or gratification, an element not found in the offense of aggravated rape, "the statutory scheme treats rape as a more serious blameworthy offense than sexual battery." *Id.* Thus, it found sexual battery to be a lesser-included offense of aggravated rape. *Id.*

We assume that if sexual battery is a lesser-included offense of aggravated rape under Burns part (b), then sexual battery is also a lesser-included offense of rape.

Likewise, the holdings of the state supreme court could arguably indicate that Class B misdemeanor assault, defined by Tennessee Code Annotated section 39-13-101(a)(3) as an assault caused by intentional or knowing physical contact which a reasonable person would regard as extremely offensive or provocative, is also a lesser-included offense of rape. In State v. Swindle, the Tennessee Supreme Court found Class B misdemeanor assault to be a lesser-included offense of aggravated sexual battery under part (b) of Burns. 30 S.W.3d 289, 293 (Tenn. 2000). It follows that it would also be a lesser-included offense of sexual battery; and since, as we have previously stated, sexual battery is a lesser-included offense of rape under Burns part (b), it is arguable that Class B misdemeanor assault is a lesser-included offense of rape. We are uncertain whether Burns dictates such a result; however, we need not resolve this issue in this appeal.

Even if sexual battery and Class B misdemeanor assault should have been charged as lesser-included offenses, the failure to charge them was harmless error. Harmless error relating to the

failure to charge lesser-included offenses must be shown "beyond a reasonable doubt." State v. Ely, 48 S.W.3d 710, 727 (Tenn. 2001). Harmless error may be shown where the jury convicts on the highest offense to the exclusion of the immediately lesser offense, necessarily rejecting other lesser offenses. State v. Williams, 977 S.W.2d 101, 106 (Tenn. 1998). Here, no lesser offenses were charged. Nevertheless, harmless error is not limited to the Williams rejection of an intermediate lesser offense; the proper inquiry is "whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial." Allen, ___ S.W.3d at ___, slip op. at 9.

In making the determination regarding harmless error, this court must examine the entire record, including the evidence at trial, the theory of the defense and the verdict. *Id.* Here, both the victim and defendant testified there was sexual penetration. There was no evidence that the defendant's action constituted mere contact as opposed to penetration. The defense theory was based entirely upon the alleged consent of the victim. The circumstantial evidence was strongly corroborative of the victim's testimony and was inconsistent with the defendant's testimony. The jury, by its verdict, accredited the victim's testimony and rejected the defendant's testimony and his theory of defense.

Accordingly, we conclude beyond a reasonable doubt that the failure to charge sexual battery and Class B misdemeanor assault did not affect the outcome of the trial and was, at most, harmless error.

## B. Statutory Rape

The defendant argues the trial court erred by not instructing the jury on statutory rape. The Tennessee Supreme Court, applying the Burns analysis, has held statutory rape is not a lesser-included offense of rape. State v. Stokes, 24 S.W.3d 303, 305-06 (Tenn. 2000). Therefore, the trial court did not err in failing to charge the jury as to statutory rape as a lesser-included offense of rape.

## CONCLUSION

Accordingly, we affirm the judgment of the trial court.

---

JOE G. RILEY, JUDGE