# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### November 18, 2003 Session

## LARRY STEPHEN BRUMIT v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-51873     Don R. Ash, Judge**

---

### No. M2003-00488-CCA-R3-PC - Filed May 12, 2004

---

The petitioner, Larry Stephen Brumit, filed for post-conviction relief from 1996 convictions for two counts of first degree murder and one count of conspiracy to commit first degree murder. The post-conviction court denied the petition. In this appeal, the petitioner argues (1) that the petition was not barred by the applicable statute of limitations; and (2) that he was denied the effective assistance of counsel. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

W.H. Stephenson, II, Nashville, Tennessee, for the appellant, Larry Stephen Brumit.

Paul G. Summers, Attorney General & Reporter; Helena Walton Yarbrough, Assistant Attorney General; and William C. Whitesell, District Attorney General, for the appellee, State of Tennessee.

### OPINION

Following a jury trial, the petitioner was convicted of two counts of first degree murder, for which he received concurrent sentences of life with parole, and one count of conspiracy to commit first degree murder, for which he received a consecutive sentence of twenty-five years. This court affirmed the convictions and sentences on direct appeal. See State v. Larry S. Brumit, M1999-00154-CCA-R3-CD (Tenn. Crim. App., at Nashville, Apr. 28, 2000). On December 4, 2000, our supreme court denied permission to appeal. In determining that the evidence was sufficient to support the convictions, this court summarized the proof at trial as follows:

> The charges . . . stem from the shooting deaths of two victims, James Albert "Bubba" Summar, II, and Brian Anthony Bettis. . . . [B]oth victims were discovered dead behind a trailer located on Liberty Gap Road in a remote area of Rutherford County.

\* \* \*

The [s]tate presented several witnesses who linked the [petitioner] socially to a "circle" of people who dealt marijuana, including Wayne Cartwright and [co-defendant] Mike Rhodes, with whom he was known to be friends. Evidence presented at trial also established that [the victims] were known to be friends. In addition, the [s]tate presented evidence that before his death, victim Summar worked as a police informant and was named in an indictment against Cartwright.

Witnesses testified that both the [petitioner] and co-defendant Rhodes were upset that Summar had been working undercover with police. Doug Bicknell and Josh Summar both testified that the [petitioner] and Summar did not like each other. Bicknell quoted the [petitioner] as saying that Summar was a "punk" and that "he would see that the little punk would get what was coming to him" because of his involvement with police. Bicknell also quoted the [petitioner] as saying that "he let his gun do his fighting for him." Furthermore, Martin Rhodes stated that he had seen the [petitioner] with a .38 caliber handgun, the same type of weapon which was used to kill Bubba Summar.

On the evening of the murders, Summar informed friends that he and Bettis were to meet with Rhodes. He took a box of marijuana with him to the trailer. At the same time, Rhodes, who was intoxicated, and the [petitioner] discussed meeting Summar and then went to the trailer, where the victims' bodies were later found. Tabitha Rhodes testified when they returned, the [petitioner] and her husband pulled into her driveway on the night of the murders so quickly that they startled her. She stated that while her husband "rustl[ed] around on the floorboard," the [petitioner] "darted out to his car and left." Bettis' pistol was later found behind Rhodes' home. Tabitha Rhodes also reported that the [petitioner] told her, "it did not have to happen that way, that they drew on him first and he did what he had to do."

The [petitioner's] roommate, Donald Ivey, testified that when the [petitioner] arrived home on the night of the shootings, he immediately began to wash clothes while he ran water for a bath. When Ivey jokingly asked the [petitioner] whether he had killed someone, the [petitioner] first did not respond but later answered, "You can't help being in the wrong place at the wrong time; can you?" Furthermore, the medical examiner who performed autopsies on the victims' bodies testified that Bettis likely coughed up blood before his death and agreed that a person in close proximity to Bettis at the time would likely have been splattered with blood.

The [petitioner] himself admitted his presence at the trailer at the time of the shootings. He also presented inconsistent versions of the shootings to police, but insisted that his co-defendant Rhodes actually fired the shots that killed both victims. In addition, Lieutenant Detective Gage introduced an audio tape of a conversation between the Defendant and co-defendant Rhodes in which the Defendant made,

-2-

among others, the following statements: "If nothing had ever been said, we'd be walking out today"; and "What was originally agreed on was if they had me, that you would take responsibility."

Id., slip op. at 2,10-11.

On December 27, 2001, over a year after the denial of an application for permission to appeal, the petitioner filed a pro se petition for post-conviction relief alleging, among other things, the ineffectiveness of trial counsel. The post-conviction court appointed counsel and set the matter for a hearing, expressing concern in its written order that the petition was filed outside the applicable one-year statute of limitations. At the hearing, the post-conviction court initially heard testimony concerning the timeliness of the petition but also accepted proof on the petitioner's substantive claims.

With regard to the timeliness issue, the petitioner testified that based on a letter he had received from his appellate counsel, he believed that he had until December 18, 2001, to file his post-conviction petition. The letter, which was dated December 18, 2000, contained the following information:

> I have received notice that the [s]tate [s]upreme [c]ourt denied our permission to appeal. This will end my representation of you in this matter. We have now appealed as far as I am able to appeal.
> You now have one (1) year within which to file a [p]ost-[c]onviction petition. You must notify the trial court that you need the necessary documents with which to file. You must also advise them (through the clerk's office) that you are indigent and need counsel appointed.

The petitioner, who was in solitary confinement at the time he prepared his petition, testified that he initially tried to mail the petition on December 3. According to the petitioner, a notary public who visited his cell on that date to notarize his signature, informed him that she did not "handle" mailing. The petitioner explained that he was on "lock down" twenty-three hours a day and that an officer did not arrive to collect the petition for mailing until the 7th, one year and three days after the denial of the application for permission to appeal to our supreme court. He contended that although the petition had been date stamped by the court clerk as having been filed on December 27th, he had received a return receipt indicating that it had been delivered on the 10th. The petitioner claimed that appellate counsel had not sent him a copy of the supreme court's order denying his application for permission to appeal and adamantly maintained that the document had not been enclosed in the letter.

Appellate counsel testified that he represented the petitioner at sentencing and at the motion for new trial as well as in his direct appeal to this court. He confirmed sending the December 18, 2000, letter to the petitioner but could not recall whether he had enclosed the supreme court's order

denying permission to appeal. He acknowledged that the failure to have done so would have been "an omission on [his] part."

With regard to the petitioner's substantive claims, the petitioner's trial counsel, who was an assistant public defender, testified that his office was appointed to represent the petitioner at the inception of the case. He recalled that at their initial meeting, the petitioner insisted that he was not present at the time of the offenses. Trial counsel testified that at the preliminary hearing, however, the state produced a transcript of a recorded conversation between the petitioner and his co-defendant Rhodes wherein each had made inculpatory statements while seated together in the back seat of a police car. According to trial counsel, the petitioner had also given videotaped statements to the police and these statements were edited by stipulation before being presented to the jury. Although he could specifically recall having reviewed all of co-defendant Rhodes's unedited videotaped statements with the petitioner, trial counsel could not remember whether they had reviewed the petitioner's unedited statements. Trial counsel explained that his file did not include any correspondence to the petitioner because they usually communicated "face to face." Although there was nothing to indicate that he had sent the petitioner copies of the various motions and orders filed in the case, he insisted that "[a]t some point [he] gave [the petitioner] copies of everything."

Trial counsel testified that the defense theory at trial conceded that the petitioner was present at the time of the offenses but argued that his co-defendant Rhodes was the perpetrator of the crimes. He denied having represented to the petitioner that it was important that the petitioner be jointly tried with Rhodes but acknowledged that "[i]t probably would have been better from our standpoint, I guess looking back on it. If we would have had somebody else sitting there in the courtroom to point the finger at." Trial counsel initially stated that he had opposed the state's severance motion but he agreed that the transcript indicated that the motion had been attended by another assistant public defender who announced that the defendant was "taking no position in regard to [the severance] motion." Trial counsel explained that he had a physical ailment at that time. He agreed that there were differences between the first and second versions of the cruiser conversation transcript produced by the state and acknowledged that he did not object or otherwise draw attention to the differences. It was trial counsel's opinion, however, that the transcript "didn't . . . really hurt us." While pointing out that he may have gone to hear some of the testimony, trial counsel testified that he never planned to attend the trial of co-defendant Rhodes and never promised the petitioner that he would. He acknowledged that he did not interview all of the persons identified on the state's witness list and yet noted that another assistant public defender working on the case had "interviewed some people on his own." He recalled that there was evidence that the victims were drug dealers and considered that to be favorable for the defense: "I felt like it was in . . . [the petitioner's] best interest[] for the victims and the man that he was blaming . . . [to] be presented in the worst light possible." According to trial counsel, a claim of self-defense was not feasible because the petitioner "said he didn't do it."

The petitioner testified as a part of the evidentiary hearing that he first met with trial counsel at the jail "a few days" after his arrest and that they later met "a few times" before trial. He claimed that trial counsel never provided him with paperwork and would not interview witnesses. The

petitioner recalled that trial counsel's initial defense theory was to discredit Rhodes because "he [had] told so many lies in his statement to the police." He contended that in February of 1996, he was "suddenly" brought to appear in court and that upon his arrival another attorney advised him that trial counsel "had to be somewhere else" and she would be representing him. The petitioner asserted that they "got into an argument and the next thing I know she stands up and says something to the [c]ourt, sits back down, it's over with and we leave. I didn't even know what we were there for." He claimed that when he later discovered that the proceeding had been a severance hearing, trial counsel explained that he planned to attend the trial of co-defendant Rhodes in order to learn the trial strategy of the prosecution. The petitioner stated that he and trial counsel argued "hot and heavy" and yet claimed that the only document that he received from trial counsel was a copy of the first version of the transcript of his police-car conversation with co-defendant Rhodes. According to the petitioner, trial counsel showed him a two-hour edited version of his videotaped statements to police but never showed him the unedited videotapes. It was his recollection that when trial counsel attempted to get a transcript of co-defendant Rhodes's trial, he was permitted only portions of the record. The petitioner acknowledged that he escaped from jail on January 29, 1996, returning two days later. It was his contention that he did not initially lie to trial counsel regarding his involvement in the offenses.

Appellate counsel, who was appointed to represent the petitioner for purposes of the motion for new trial and direct appeal, testified that he initially asked for the file from the public defender's office but was denied access because the petitioner had filed a civil lawsuit against trial counsel. Appellate counsel recalled that he was given the file, which he did not believe to be complete, approximately one to one and one-half years later. It was his opinion that there was "a complete lack of investigation" by trial counsel. Appellate counsel testified that he would have moved to suppress the petitioner's squad-car conversation with co-defendant Rhodes on the grounds that it was not in furtherance of any conspiracy. He stated that he would have challenged the admissibility of the petitioner's videotaped statements on the grounds that they were involuntary, and he contended that he would have objected to the testimony of Bicknell. Appellate counsel explained that he did not present the ineffectiveness of trial counsel on appeal because he did not want to adversely affect the petitioner's potential post-conviction claims.

At the conclusion of the hearing, the post-conviction court found that the petitioner's claims were barred by the statute of limitations. It also held that the petitioner had failed to prove that he was entitled to relief on the grounds of ineffective assistance of counsel.

I

Initially, the petitioner asserts that the trial court erred by finding that his claims were time-barred, contending that the "interest[s] of justice" require a determination that his petition was timely filed. The state argues otherwise.

The original Post-Conviction Procedure Act of 1967 did not include a statute of limitations. On July 1, 1986, the General Assembly adopted a three-year statute of limitations. See Tenn. Code Ann. § 40-30-102 (repealed 1995). In 1995, our legislature passed the new Post-Conviction

-5-

Procedure Act, which is applicable to all petitions filed after May 10, 1995, and provides, in pertinent part, as follows:

> (a) Except as provided in subsections (b) and (c), a person in custody under a sentence of a court of this state must petition for post-conviction relief under this part within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of such petition shall be barred. The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity. Time is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file such an action and is a condition upon its exercise. Except as specifically provided in subsections (b) and (c), the right to file a petition for post-conviction relief or a motion to reopen under this chapter shall be extinguished upon the expiration of the limitations period.

Tenn. Code Ann. § 40-30-202(a). In 2003, the Post-Conviction Procedure Act was renumbered within the Code. It now appears at sections 40-30-101 through 40-30-122.

> Rule 2(G) of the Tennessee Rules of Post-Conviction Procedure governs filings:

> Papers required or permitted to be filed by the rules of post-conviction procedure, when filed by an attorney or a pro se petitioner who is not incarcerated, are filed when received by the clerk of court.
> If papers required or permitted to be filed by these rules are prepared by or on behalf of a pro se petitioner incarcerated in a correctional facility and are not received by the clerk of the court until after the time fixed for filing, filing shall be timely if the papers were delivered to the appropriate individual at the correctional facility within the time fixed for filing. . . . Should timeliness of filing or service become an issue, the burden is on the pro se petitioner to establish compliance with this provision.

Tenn. Sup. Ct. R. 28 § 2(G) (emphasis added). Similarly, Tennessee Rule of Criminal Procedure 49(c) provides, in pertinent part, as follows:

> If papers required or permitted to be filed pursuant to the rules of criminal procedure are prepared by or on behalf of a pro se litigant incarcerated in a correctional facility and are not received by the clerk of the court until after the time fixed for filing, filing shall be timely if the papers were delivered to the appropriate individual at the correctional facility within the time fixed for filing.

Tenn. R. Crim. P. 49(c).

Tennessee Code Annotated section 40-30-202(b) establishes when a court may consider a petition filed outside the statutory limitations period. That statute provides as follows:

> (b) No court shall have jurisdiction to consider a petition filed after such time unless:
>
> (1) The claim in the petition is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized at the time of trial, if retrospective application of that right is required. . . . ;
>
> (2) The claim in the petition is based upon new scientific evidence establishing that such petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; or
>
> (3) The claim asserted in the petition seeks relief from a sentence that was enhanced because of a previous conviction and such conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid.

Tenn. Code Ann. § 40-30-202(b).

In Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992), our supreme court held that in certain situations application of the statute of limitations in a post-conviction proceeding might violate constitutional due process. In determining whether there has been such a violation, the essential question is whether the time period allowed by law provides the petitioner a fair and reasonable opportunity to file suit. Id. In Burford, the petitioner could not have filed within the three-year limitation absent a determination on his prior post-conviction petition. Our supreme court ruled that Burford was "caught in a procedural trap and unable to initiate litigation . . . despite the approach of the three-year limitation." Id.

Recently, in Williams v. State, 44 S.W.3d 464 (Tenn. 2001), our supreme court held that strict application of the statute of limitations to cases in which a petitioner has been unilaterally deprived of the opportunity to seek second-tier review of his convictions might violate due process. Williams's attorney filed a motion to withdraw as counsel some nine months after his convictions were affirmed by this court. His motion included an assertion that he had timely sent a notification of the disposition of the appeal but later learned that Williams did not receive the notification. Counsel then asked for additional time within which to file an application for permission to appeal to the supreme court. The request was denied as untimely. Williams then filed a pro se petition for post-conviction relief outside the one-year statute of limitations. Our supreme court ruled that "due process considerations may have tolled the running of the statute of limitations for filing a post-conviction petition" and remanded the case "for an evidentiary hearing to determine the circumstances surrounding [Williams'] filing of his post-conviction petition." Id. at 467.

In Williams, our high court emphasized that an attorney's misrepresentation, as opposed to mere negligence, could result in due process tolling. Id. at 468-71. It determined that "an attorney's misrepresentation . . . would also be beyond a defendant's control" and could preclude the defendant

from independently seeking relief. Id. at 469. Specifically, the court concluded that "[i]f Williams was under the impression that a Rule 11 application was pending during this time, then he was precluded from acting pro se to pursue post-conviction relief while presumably being represented by counsel." Id. at 471. Our supreme court observed that "[t]he question, then, is whether the appellee was, in fact, misled to believe that counsel was continuing the appeals process, thereby requiring the tolling of the limitations period." Id. The limitations period is tolled "during [the] time when the [petitioner] was unable to seek [post-conviction] relief." Id. at 464.

At the close of the hearing, the post-conviction court ruled on the timeliness issue as follows:

> And . . . the case of Marco D. Butler vs. State of Tennessee, which is a [s]upreme [c]ourt case, . . . talks about delivering to an appropriate individual. . . . And it says, . . . any such calculus should include an accounting of the rules, guidelines and[/]or customary practices relating [to] the prison mail system used by the correctional facility in question, as well as any other factors deemed appropriate under the circumstances. And [the petitioner] . . . put on no proof as to what those circumstances would be. . . . And I don't believe that you didn't know it was December 4th. . . .

Our supreme court denied the petitioner's application for permission to appeal on December 4, 2000. Any petition for post-conviction relief was, therefore, due to be filed on or before December 4, 2001. The petitioner's signature on the pro se petition was notarized on December 3, 2001, the date on which the petitioner claims to have initially presented the petition to the attesting notary public for filing. Thus, under Post-Conviction Procedure Rule 2(G) and Tennessee Rule of Criminal Procedure 49, the filing would have been timely if the notary public were the "appropriate individual at the correctional facility" to receive it for mailing. There is no evidence in the record regarding the prison's mail system or the role of the notary, if any, therein. So, as hard as the result may be, it appears that the trial court correctly ruled that the petitioner failed to meet his burden of proof. In Butler v. State, 92 S.W.3d 391, 391 (Tenn. 2002), our high court stated as follows:

> Determining who is an "appropriate individual" for purposes of filing post-conviction petitions under Rule 28 § 2(G) or Tennessee Rule of Criminal Procedure 49(c) will be a question of fact best resolved by the various trial courts of this state. We decline to adopt a bright-line rule in this regard because different correctional facilities may have divergent guidelines or customs regarding the appropriate individual(s) to whom prisoners should file legal mail. However, any such calculus should include an accounting of the rules, guidelines, and/or customary practices relating to the prison mail system used by the correctional facility in question, as well as any other factor(s) deemed appropriate under the circumstances.

With the record devoid of any proof of the circumstances surrounding the mailing of the petition, the petitioner has not demonstrated that his filing was timely by virtue of his having presented it to the notary public.

Likewise, the petitioner's claims are time-barred even if the statute of limitations was tolled by appellate counsel's failure to fully advise the petitioner regarding the date that our supreme court denied permission to appeal. In our view, the December 18, 2000, letter from appellate counsel was inadequate to inform the petitioner of the statute of limitations. The letter did not purport to include a copy of the supreme court's order denying permission to appeal and appellate counsel conceded that he did not recall having enclosed a copy. The letter did not contain the date of the order. Thus, by use of the Williams rationale, due process concerns may have tolled the statute of limitations until December 18, 2001. The post-conviction judge, however, who heard the testimony first-hand and was able to observe the demeanor of the witnesses, concluded that the petitioner had actual knowledge of the correct statute of limitations. See Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). Most importantly, any entitlement to tolling for reasons of due process would not be of benefit to the petitioner. While claiming to have presented his petition to prison authorities for mailing on December 7, the petitioner was unable to produce evidence as to the rules of the prison mail system, the identity of the person who accepted the petition for mailing, or any other factors that would explain the whereabouts of the petition between that date and December 27, when it was received by the post-conviction court clerk. Although he contends that he received a return receipt indicating that the petition had been received by the court clerk on December 10, he has failed to produce the document. Accordingly, the trial court's determination that the petitioner's claims are barred by the one-year statute of limitations is affirmed.

II

The petitioner also asserts that trial counsel was ineffective for failing to adequately investigate, failing to adequately research the applicable law, failing to seek the admission of "vital testimony," and failing to object to inadmissible evidence. It is our conclusion that even if the petitioner's claims were not time-barred, these grounds would not be a basis for relief.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a [petitioner] must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Under our statutory law, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the trial court. Bates v. State, 973 S.W.2d 615 (Tenn. Crim. App. 1997). When reviewing the application of law to those factual findings, however, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

In this case, the post-conviction court made the following findings:

> Based upon the facts that I've seen on this record, I cannot find that you carried your burden by clear and convincing proof that [trial counsel's representation] did fall below [the Strickland] standard. Somebody got killed. Obviously, [co-defendant] Rhodes isn't one of the great men of American History, but I don't think [trial counsel's] representation of [the petitioner] fell below that standard.
> And secondly, even if it did, which I don't think it did, . . . [t]he benchmark for judging any claim of ineffective assistance of counsel, must be where the counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
> [E]ven with the complaint that [the petitioner has], I do not think that [he] meet[s] prong two by clear and convincing evidence.

Initially, the petitioner claims that trial counsel failed to adequately investigate the case, alleging generally that "basic preparation was not performed." More specifically, he complains that trial counsel failed to conduct any legal research and that trial counsel failed to attend (and learn from) the trial of co-defendant Rhodes. Because the petitioner does not specify what legal research he contends should have been done and does not assert any particular prejudice as a result of any

failure, this claim fails both prongs of the <u>Strickland</u> test. As to the other claim, trial counsel was unable to recall whether he had attended any of the Rhodes trial. While attendance at the co-defendant's trial may have been helpful, it was not a requirement. Adequate preparation, no matter how it is accomplished, is the standard. It is unclear whether trial counsel ever obtained any portion of the Rhodes transcript. The record contains a written motion for a copy of the transcript as filed by trial counsel but there is no indication of the trial court's ruling. A transcript could have been as helpful to the defense as attendance at the trial. On direct appeal, the petitioner contended that the trial court had erred by failing to provide a "free, complete" transcript. <u>See</u> <u>Larry S. Brumit</u>, No. M1999-00154-CCA-R3-CD, slip op. at 16. That implies that trial counsel had something less than a full record. It does appear that at some point trial counsel obtained the jury instructions given in the Rhodes trial. Nevertheless, the petitioner does not allege any specific prejudice as a result of trial counsel's failure to either attend Rhodes' trial or acquire a complete transcript. <u>See id.</u> (finding that the petitioner had failed to demonstrate on direct appeal how he was prejudiced by the trial court's denial of the transcript). The record does reflect that trial counsel conferred with the petitioner, obtained discovery from the state, interviewed numerous witnesses, filed pre-trial motions for suppression of the petitioner's statement, sequestered voir dire, and a change of venue, filed motions in limine, and made special jury instruction requests. From all of this, it is our conclusion that the evidence does not preponderate against the post-conviction court's determination that the petitioner has failed to prove by clear and convincing evidence that trial counsel's preparation was inadequate.

Next, the petitioner asserts that trial counsel was ineffective for failing to oppose the severance of co-defendant Rhodes. The grant or denial of a motion for severance of defendants is a matter that rests within the sound discretion of the trial court. <u>State v. Burton</u>, 751 S.W.2d 440, 447 (Tenn. Crim. App. 1988). Rule 14 of the Tennessee Rules of Criminal Procedure governs severance of defendants and provides in pertinent part as follows:

> (2) The court, on motion of the State or on motion of the defendant other than under subdivision (c)(1), shall grant a severance of defendants if:
>> (i) before trial, it is deemed necessary to protect a defendant's right to a speedy trial or it is deemed appropriate to promote a fair determination of the guilt or innocence of one or more defendants; or
>> (ii) during trial, with consent of the defendant to be severed, it is deemed necessary to achieve a fair determination of the guilt or innocence of one or more defendants.

Tenn. R. Crim. P. 14(c)(2).

Initially, the petitioner fails to specify the grounds on which trial counsel should have opposed the state's severance motion or to demonstrate that trial counsel would have been successful had he done so. Absent from the record is the transcript of the trial court's hearing on the motion to sever. It is, of course, the duty of the appellant to prepare a complete and accurate record on appeal. Tenn. R. App. P. 24(b). The failure to prepare an adequate record for review of an issue results in a waiver of that issue. <u>Thompson v. State</u>, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997).

-11-

Here, trial counsel testified that in hindsight it might have been beneficial for the petitioner and co-defendant Rhodes to have been tried jointly. On claims of ineffective assistance of counsel, however, the defendant is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Under these circumstances, this court cannot conclude that trial counsel was ineffective for failing to oppose the state's severance motion.

The petitioner next contends that trial counsel was ineffective for failing to introduce evidence that a nine millimeter handgun had been recovered from behind the residence of co-defendant Rhodes. He argues that the evidence would have been relevant and probative because a handwritten sheriff's department report indicates that the victim Summar was shot with a nine millimeter bullet. The report, which is entitled "Victim Assessment Sheet Mortuary/Autopsy," includes Summar's identification information and descriptions of both the wounds to and items recovered from the body. The record is clear, however, that Tennessee Bureau of Investigation testing established that the bullet was a .38 caliber. The medical examiner also testified at trial that the bullet that killed Summar was "either a .38 or .357." See Larry S. Brumit, No. M1999-00154-CCA-R3-CD, slip op. at 9. Thus, introduction of the report would have been of little benefit to the defense.

Next the petitioner argues that trial counsel was ineffective for failing to seek suppression of his conversation with Rhodes in the police cruiser. Initially, the record reflects that trial counsel did, in fact, file a motion to suppress. There is, however, no transcript of any hearing and no indication of a ruling. No testimony regarding the motion was presented at the hearing. Again, it is the duty of the appellant to prepare a complete and accurate record for our review and failure to do so will generally result in waiver. Tenn. R. App. P. 24(b); Thompson, 958 S.W.2d at 172. It is our conclusion that trial counsel challenged the admissibility of the cruiser conversation, albeit unsuccessfully, and that the claim by the petitioner is without merit.

In connection, the petitioner also complains that trial counsel should have questioned certain inconsistencies between the first and second versions of the cruiser conversation transcript as produced by the state. There appear to be two differences between the first transcript, typed by a sheriff's department employee and the second, prepared by a certified court reporter. The first transcript provides, in pertinent part, as follows:

| | |
|---|---|
| [RHODES]: | We're both history if we don't get that [first degree murder charge] off us. We are a memory. |
| [PETITIONER]: | What was originally agreed on was to have me. |
| [RHODES]: | Well I know but that, . . . . |

\* \* \*

| | |
|---|---|
| [RHODES]: | And the truth Larry if you hadn't said anything to Bubba you would have walked. |
| [PETITIONER]: | . . . . Yeah it's just . . . |

The second transcript indicates the same conversation snippets as follows:

> [RHODES]:          We're both history if we don't get that [first degree murder charge] off of us. We are a memory.
> [PETITIONER]:      What was originally agreed on was if they had me that you would take the responsibility –
> [RHODES]:          Well, I know that . . . .
>                    \*      \*      \*
> [PETITIONER]:      – and the truth was if you hadn't have said anything to Bubba, we would have walked. Yeah, it's just –

Initially, the transcript of the petitioner's trial is not included in the record and does not appear to have been introduced in the post-conviction court. In consequence, this court cannot ascertain the method by which the transcripts were used at trial or what testimony may have been elicited about them. With the burden of proving his clams by clear and convincing evidence, the petitioner should have assured inclusion of the trial transcript. See Tenn. Code Ann. § 40-30-210(f). Additionally, the actual tape recording of the conversation, rather than the transcripts, should have been entered into evidence for the jury's consideration. In our view, the discrepancies complained of by the petitioner are minor in the context of the entire transcript and the changes in the second version could be read to benefit the petitioner. Under these circumstances, this court cannot conclude that the petitioner has satisfied either prong of the Strickland test.

Finally, the petitioner asserts that trial counsel was ineffective for failing to object to certain testimony from Doug Bicknell, the victim Summars's second cousin. Without the trial transcript in the record, Bicknell's testimony is not before this court. In the opinion on the petitioner's direct appeal, this court summarized the relevant portion of Bicknell's testimony as follows:

> After the [petitioner] began to work for Brentwood Log Homes, Bicknell, the [petitioner], and other employees were sent to Ohio to build a log house, where they stayed at the same motel. Bicknell recalled an incident involving the [petitioner] that occurred while they were in Ohio: He and the other Brentwood Log Homes employees were sitting in the motel room drinking one day, and the [petitioner] and another employee 'were talking about [the victim Summar] being a snitch." Bicknell recalled that when he defended his cousin, the [petitioner] "said that he would see that the little punk would get what was coming to him." Bicknell reported that he "told [the petitioner] if he messed with my cousin, me and him would have dealings," and the [petitioner] "said he was getting too old for all that fighting." Bicknell testified that the [petitioner] then "reached in his bag and pulled his gun and said he let his gun do his fighting for him."

Larry S. Brumit, No. M1999-00154-CCA-R3-CD, slip op. at 3. This court rejected the petitioner's challenge to the testimony on the ground that it was waived by trial counsel's failure to make a contemporaneous objection. See id. at 13.

The state contends that the petitioner has "put forth no proof that had such an objection been made, the trial court would have granted it." We must agree. The petitioner does not assert the grounds on which he claims Bicknell's testimony should have been excluded, arguing only that it was "prejudicial." Thus, the petitioner is not entitled to relief on this claim.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE