# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

### Assigned on Briefs September 9, 2008

## STATE OF TENNESSEE v. DEVON WIGGINS

### Direct Appeal from the Circuit Court for Dyer County
#### No. C06-248    Russell Lee Moore, Jr., Judge

---

### No. W2007-01734-CCA-R3-CD  - Filed May 15, 2009

---

A Dyer County Circuit Court jury convicted the appellant, Devon Wiggins, of two counts of selling one-half gram or more of cocaine within a drug-free school zone, and the trial court sentenced him to twenty-five years for each conviction to be served concurrently with each other but consecutively to prior sentences.  The trial court also ordered the appellant to pay a five-thousand-dollar fine for each conviction.  On appeal, the appellant contends that (1) Tennessee Code Annotated section 39-17-432 (2005) violates due process and resulted in his receiving an excessive sentence;  (2) the evidence is insufficient to support the convictions; (3) the trial court erred by denying his motion for a bifurcated trial; (4) the trial court erred by refusing to instruct the jury on the sale of a counterfeit substance; (5) the trial court erred by failing to instruct the jury on facilitation as a lesser included offense; (6) the trial court erred by not recusing itself; (7) the prosecutor's closing statement was improper; and (8) the cumulative effect of the errors warrants a reversal of his convictions.  Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

H. Tod Taylor, Dyersburg, Tennessee, for the appellant, Devon Wiggins.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Lance Webb, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

Kim Pierce testified at trial that she acted as a confidential informant for the police and bought crack cocaine from the appellant, whom she knew as "DD," three times. The first drug buy occurred on December 21, 2005. On that date, the police met with Pierce in her apartment at the corner of Sampson and College Streets in Dyersburg. Pierce called the appellant's cellular telephone number and told him to "bring me fifty." The police recorded Pierce's call to the appellant, and the State played the audiotape for the jury. Pierce said the police officers searched her, affixed a wire transmitter to her body, and gave her fifty dollars. When the appellant arrived, Pierce walked downstairs from her apartment and outside to the appellant's dark-colored Pontiac Grand Am. She gave him fifty dollars, and he gave her rock cocaine in a baggie. Pierce walked back upstairs to her apartment and gave the cocaine to the police.

Pierce testified that the second drug buy occurred on January 18, 2006. She telephoned the appellant and spoke with someone named "Tasha." She told Tasha that she wanted "[e]ighty," and Tasha told her, "He's on his way right now." The police tape recorded Pierce's call, and the State played the audiotape for the jury. Pierce said the police searched her and gave her eighty dollars. Twenty or thirty minutes later, the appellant had not arrived with the cocaine, so Pierce telephoned again and spoke with him. Shortly thereafter, the appellant arrived in front of Pierce's apartment driving a green Thunderbird, and Tasha was with him. Pierce went downstairs and gave him the money in exchange for crack cocaine. She returned to her apartment and gave the cocaine to the police.

Pierce testified that the third drug buy occurred on January 25, 2006. Pierce telephoned the appellant and told him she wanted "[e]ighty." The appellant told her, "All right." The police tape recorded Pierce's call to the appellant, and the State played the audiotape for the jury. Pierce said the police searched her, attached a wire transmitter to her body, and gave her eighty dollars. She went downstairs and gave the money to the appellant, who was driving a maroon Dodge Neon. Pierce stated that the police paid her seventy dollars as compensation for her participation in each drug buy and that she was going to receive one hundred dollars for testifying in court. She acknowledged that she had multiple prior convictions for misdemeanor theft.

On cross-examination, Pierce testified that she used to smoke crack cocaine but that she had been "clean" for one year. She stated that she had known the appellant for eight years and that she previously had sex with him in exchange for crack cocaine. At the end of 2005, Pierce approached the police about becoming a confidential informant. She acknowledged that she used two different telephone numbers to contact the appellant. However, she said she was unaware that one of the phone numbers which she used to contact the appellant on January 18, 2006, belonged to Tasha Akins. She said that although the telephone may have been registered to Akins, the phone actually belonged to the appellant. She acknowledged that in addition to her prior convictions for misdemeanor theft, she had prior convictions for criminal impersonation, attempted theft, and failure to appear. She also acknowledged that a charge for felony theft was pending against her.

Officer Todd Thayer of the Dyersburg Police Department testified that he met with Kim Pierce on December 21, 2005, and that she told the police she could buy drugs from "DD." The

police told her to buy fifty dollars worth of cocaine, and Pierce telephoned the appellant. After the phone call, the police searched her. During the search, the police checked Pierce's pockets and patted her down. Pierce also had to take off her shoes and pull out her shirt and bra to make sure nothing fell out. The police attached a wire transmitter to her body and gave her fifty dollars. The officers parked down the street from Pierce's apartment and listened to the drug buy. They also tried to videotape the transaction but could not because it took place at night. Officer Thayer saw Pierce leave her apartment and walk to the driver's side of a car. Officer Thayer said he thought the car was a light-colored Pontiac Grand Am. Pierce went back inside; called the officers; and told them, "It's done." The officers went into her apartment, and she gave them the crack cocaine. Officer Thayer put the cocaine in a small bag and searched Pierce again. Although Pierce did not know the appellant's real name, Officer Thayer knew through his work at the police department that "DD" was the appellant. Moreover, officers showed Pierce a photographic array, and she identified the appellant as "DD."

Officer Thayer testified that he also worked with Pierce on January 25, 2006, and that they went through the same procedure as they did on December 21. The police gave Pierce eighty dollars to buy drugs, and the appellant arrived at the apartment in a red Dodge Neon. Pierce went outside, made contact with the appellant, and came back upstairs to her apartment. Officer Thayer saw the appellant driving the Neon and videotaped the transaction. The State played the videotape for the jury. Officer Thayer said Pierce bought cocaine from the appellant and gave it to the police. Officer Thayer put the cocaine in a small bag and searched Pierce again. He said that Pierce was paid seventy dollars for her participation in each drug buy and that she was paid fifty dollars for appearing in court. He stated that her payment for appearing in court did not depend on the outcome of the trial.

Officer Thayer testified that the police department often had to use people with prior convictions as confidential informants because they knew drug dealers. He acknowledged that First Methodist Church, located at the corner of Sampson and College Streets, operated a daycare and preschool. Officer Thayer stated that the police used a measuring wheel at crime scene investigations and that the measuring wheel had a counter on it. He stated that in order to use the wheel, a person had to reset it to zero, put it on the ground, and walk with it. As the person walked, the wheel turned and "clicked off" the counter. He said that although no one had ever shown him how to use the measuring wheel, it was "pretty much self-explanatory," and he acknowledged that the police department accepted the wheel as reliable. Officer Thayer stated that he used the measuring wheel to measure the distance from the corner of College and Sampson Streets to the preschool's front door and that the distance was eight hundred eighty-eight feet. Using a different route, Investigator Jeff Box from the public defender's office measured the distance from the location of the drug deals to the curb of the preschool. The distance was eight hundred seventy feet.

On cross-examination, Officer Thayer testified that Pierce was in the car with police officers on December 21, 2005, when she telephoned the appellant. After she called him, she went back into her apartment to wait for the appellant to arrive, and the officers did not search her home. The officers could not strip search Pierce because she was female. He stated that he did not know where

or when the police department purchased the measuring wheel, that he had never read any instructions on how to use the wheel, that he had never seen anyone calibrate it, and that he did not know its rate of error. He acknowledged that he did not know if the wheel measured accurately.

Investigator Thomas Langford of the Dyersburg Police Department testified that he was involved in the drug buy on January 18, 2001. On that date, officers met with Pierce in her home, and Investigator Langford asked Pierce to buy eighty dollars worth of cocaine. Pierce telephoned the appellant, and Investigator Langford recorded their conversation. After the phone call, Investigator Langford searched Pierce's person for money or controlled substances and wired her with an electronic transmitter. Investigator Langford waited at the window with a video recorder and saw the appellant arrive driving a green Thunderbird. The State played the videotape for the jury. Investigator Langford said Pierce went downstairs to the street, conducted the transaction, and returned to her apartment. Pierce gave the drugs to the officers, and the officers searched her again. The police paid Pierce seventy or eighty dollars for her work that day. Investigator Langford stated that the amount of her pay was not affected by the outcome of any trials.

On cross-examination, Investigator Langford acknowledged that a person would have been unable to see the drug transaction from the back door of the First Methodist Church, and he stated that he did not measure the distance from Pierce's apartment to the church. He said he did not make Pierce take off her bra when he searched her but made her "[s]hake it out." He also did not feel her breasts, pubic area, or buttocks during the search. Pierce told Investigator Langford the telephone number that she used to contact the appellant, but Investigator Langford did not watch her dial the number. He acknowledged that one-third to one-half of the green Thunderbird's windshield was darkly tinted and stated that he did not know if a passenger was in the car with the appellant. He acknowledged that as a result of an incident that occurred on March 22, 2006, Latasha Akins was charged with selling a Schedule II controlled substance within a school zone.

Investigator Mark Reynolds of the Dyersburg Police Department testified that he delivered the evidence recovered in this case to the Tennessee Bureau of Investigation (TBI) Laboratory. On cross-examination, he acknowledged that on March 22, 2006, Paul Isom and Michael Nance were indicted with Latasha Akins for selling cocaine within a school zone.

TBI Special Agent Dana Parmenter testified as an expert in forensic chemistry that she analyzed the evidence in this case. Color tests on substances received by the Dyersburg police on December 21, 2005, January 18, 2006, and January 25, 2006, were positive for cocaine. Agent Parmenter also performed analysis on the evidence using a mass spectrometer. She explained that "you put the [evidence] sample in the instrument, you get a [graph] printout, you compare that printout to a known standard [graph] for cocaine and if they match exactly you know the sample contains cocaine." She stated that the results from the mass spectrometer showed the evidence from the three drug buys was cocaine. The cocaine purchased on December 21, 2005, weighed 0.51 grams; the cocaine purchased on January 18, 2006, weighed 0.8 grams; and the cocaine purchased on January 25, 2006, weighed 1.3 grams.

On cross-examination, Agent Parmenter testified that she weighed the drugs on April 7, 2006, and that the scales had been calibrated on April 5, 2006. She stated that the mass spectrometer analysis produced a graph for each piece of evidence and that she visually compared the graphs to the standard graph for pure cocaine. All of the graphs "had the same peaks" as the standard graph. She stated that she did not know the rate of error for the mass spectrometer and that, to her knowledge, it did not have a rate of error. Although the appellant had been charged with selling one-half gram or more of cocaine in a school zone on December 21, 2005 (count one), January 18, 2006 (count two), and January 25, 2006 (count three), the jury acquitted him of count one and found him guilty of counts two and three.

## II. Analysis

### A. Drug-Free School Zone Act

The appellant contends that Tennessee Code Annotated section 39-17-432, the Drug-Free School Zone Act (DFSZA), is unconstitutional because it violates due process. Specifically, he contends that subsection (b)(3) is vague and contradicts subsections (b)(1) and (c). In a related issue, he contends that because subsection (b)(3) supersedes subsection (c), he received an excessive sentence. The State contends that the appellant has waived the constitutionality issue and that, in any event, the statute is not unconstitutional and the appellant did not receive an excessive sentence. We conclude that the appellant is not entitled to relief.

In a pretrial motion, the appellant argued that Tennessee Code Annotated section 39-17-432 was unconstitutional because subsection (b)(1) stated that a violation of the DFSZA required punishment one classification higher than normally provided for such a violation, but subsection (b)(3) stated that a violation within certain school zones, such as the zone of a preschool, "shall not be subject to additional incarceration as a result of this subsection (b)." Thus, he contended the statute was unconstitutional because it was contradictory and "so vague, indefinite and uncertain that persons must speculate as to its meaning."

At a hearing on the motion, the State conceded that while the statute was "poorly worded," it was not unconstitutional. The State acknowledged that because the school zone at issue in this case was a preschool, subsection (b)(3) prohibited punishing the appellant's violation, typically a Class B felony, as a Class A felony. However, the State argued that if the jury convicted the appellant, he still would have to serve the entire minimum sentence in the range in confinement as required by subsection (c). The trial court found no merit to the appellant's constitutionality claim and denied his motion. After the jury convicted the appellant, the trial court held a sentencing hearing. The trial court sentenced the appellant as a Range III, persistent offender to twenty-five years, the midpoint in the range for a Class B felony, for each conviction. See Tenn. Code Ann. § 40-35-112(c)(2). On appeal, the appellant maintains that the DFSZA is unconstitutional because subsections (b)(1) and (b)(3) contradict each other and because subsections (b)(3) and (c) contradict each other. In a related argument, he also contends that subsection (b)(3) supercedes subsection (c) and, therefore, he cannot be required to serve the entire minimum sentence in the range as required

by subsection (c). We disagree with the appellant's arguments.

"Due process requires that a statute provide 'fair warning' and prohibits holding an individual criminally liable for conduct that a person of common intelligence would not have reasonably understood to be proscribed." State v. Burkhart, 58 S.W.3d 694, 697 (Tenn. 2001) (citing Grayned v. City of Rockford, 408 U.S. 104, 92 S. Ct. 2294 (1972)). "A statute is void for vagueness if it is so vague, indefinite, and uncertain that persons must speculate as to its meaning, and if it fails to give a person of ordinary intelligence fair notice that his or her conduct is forbidden by the statute." State v. Whaley, 982 S.W.2d 346, 348 (Tenn. Crim. App. 1997). "The vagueness doctrine does not invalidate every statute which a reviewing court believes could have been drafted with greater precision." State v. Lyons, 802 S.W.2d 590, 592 (Tenn. 1990). This court has a duty to "adopt a construction which will sustain a statute and avoid constitutional conflict if its recitation permits such a construction." Id. at 592. We review issues of statutory construction de novo. State v. Goodman, 90 S.W.3d 557, 563-64 (Tenn. 2002).

As charged in the indictment, Tennessee Code Annotated section 39-17-417(a)(3) makes it unlawful for a person knowingly to sell a controlled substance. If a person sells one-half gram or more of cocaine, a Schedule II controlled substance, the offense is a Class B felony. See Tenn. Code Ann. §§ 39-17-417(c)(1), -408(b)(4). Prior to 2005, Tennessee Code Annotated section 39-17-432 provided in relevant part as follows:

> (a) It is the intent of this section to create Drug-Free School Zones for the purpose of providing all students in this state an environment in which they can learn without the distractions and dangers that are incident to the occurrence of drug activity in or around school facilities. The enhanced and mandatory minimum sentences required by this section for drug offenses occurring in a Drug-Free School Zone are necessary to serve as a deterrent to such unacceptable conduct.
>
> (b) A violation of § 39-17-417 . . . that occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school or secondary school shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation.
>
> (c) Notwithstanding any other provision of law or the sentence imposed by the court to the contrary, a defendant sentenced for a violation of subsection (b) shall be required to serve at least the minimum sentence for such defendant's appropriate range of sentence. Any sentence reduction credits such defendant may be eligible for or earn shall not operate to permit or allow the release of

such defendant prior to the full service of such minimum sentence.

In 2005, the legislature amended the DFSZA to read, in pertinent part, as follows:

(a) It is the intent of this section to create Drug-Free Zones for the purpose of providing vulnerable persons in this state an environment in which they can learn, play and enjoy themselves without the distractions and dangers that are incident to the occurrence of illegal drug activities. The enhanced and mandatory minimum sentences required by this section for drug offenses occurring in a Drug-Free Zone are necessary to serve as a deterrent to such unacceptable conduct.

(b)(1) A violation of § 39-17-417, or a conspiracy to violate the section, that occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school, secondary school, preschool, child care agency, or public library, recreational center or park shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation.

(2) In addition to any other penalty imposed by this section, a person convicted of violating this subsection (b) shall also be subject to the following:

. . . .

(D) Upon conviction of a Class B felony, a fine of not more than sixty thousand dollars ($60,000); and

(E) Upon conviction of a Class A felony, a fine of not more than one hundred thousand dollars ($100,000).

(3) A person convicted of violating this subsection (b), who is within the prohibited zone of a preschool, childcare center, public library, recreational center or park shall not be subject to additional incarceration as a result of this subsection (b) but shall be subject to the additional fines imposed by this section.

(c) Notwithstanding any other provision of law or the sentence imposed by the court to the contrary, a defendant sentenced for a violation of subsection (b) shall be required to serve at least the minimum sentence for the defendant's appropriate range of sentence.

> Any sentence reduction credits the defendant may be eligible for or earn shall not operate to permit or allow the release of the defendant prior to full service of the minimum sentence.

Tenn. Code Ann. § 39-17-432 (2005). The DFSZA is not a separate offense but is only intended to enhance penalties for violations of the Drug Control Act. State v. Smith, 48 S.W.3d 159, 167 (Tenn. Crim. App. 2000).

Initially, we note that the State contends for the first time on appeal that the appellant waived any issue regarding the constitutionality of the statute because he failed to provide notice to the Attorney General as required by Tennessee Code Annotated section 29-14-107(b) and Rule 24.04, Tennessee Rules of Civil Procedure. However, Tennessee Code Annotated section 29-14-107(b) requires notice to the attorney general when the constitutional validity of a general state law is challenged in a declaratory judgment action. Tennessee Rule of Civil Procedure 24.04 requires notice to the attorney general when the constitutional validity of a state statute is challenged in a civil action. The Tennessee Rules of Civil Procedure generally do not apply to criminal cases. See Alley v. State, 882 S.W.2d 810, 816 (Tenn. Crim. App. 1994). Neither the statute nor the rule is applicable in this case. Therefore, notification was not required.

Turning to the appellant's claim, we recognize that this court previously has held that the DFSZA is not overbroad or vague and, therefore, does not violate principles of due process guaranteed by the Fourteenth Amendment to the United States Constitution and article 1, section 8 of the Tennessee Constitution. Smith, 48 S.W.3d at 164-68; State v. Jenkins, 15 S.W.3d 914, 917-18 (Tenn. Crim. App. 1999). However, as noted by the appellant, we have not considered a constitutional challenge to the Act since the 2005 amendment. Like the previous version of the Act, the current version provides that a defendant "shall be punished one (1) classification higher than is provided in section 39-17-417(b)-(I) for such violation." Tenn. Code Ann. § 39-17-432(b)(1). In other words, a defendant convicted of selling one-half gram or more of cocaine, ordinarily a Class B felony, would be punished for a Class A felony if the defendant sold the drug within one thousand feet of a school. However, subsection (b)(3) of the amended Act specifically exempts certain schools, such as preschools, from the higher classification in subsection (b)(1). While we agree with the State that the statute is "poorly worded," the subsections are not contradictory or vague, and the exemption in subsection (b)(3) made the appellant subject only to the period of incarceration for a Class B felony.

The appellant also contends that subsections (b)(3) and (c) are contradictory and violate due process because subsection (b)(3) in the 2005 amendment exempts a defendant convicted of selling drugs within certain school zones from "additional incarceration" while subsection (c), which remained unchanged from the previous version of the Act, mandates additional incarceration by requiring a defendant to serve the entire minimum sentence in the range. In a related argument, he also contends that subsection (b)(3) supercedes subsection (c) and prohibits him from serving his entire minimum sentence in the range in confinement.

Again, we disagree with the appellant's contentions. Subsection (b)(3) states that a defendant shall not be subjected to additional incarceration "as a result of this subsection (b) but shall be subject to the additional fine imposed by this section." Tenn. Code Ann. § 39-17-417(b)(3). When amending the statute, the legislature could have specified in subsection (b)(3) that a defendant also would not be required to serve the minimum punishment in the range as required by subsection (c). The fact that the legislature failed to apply the exemption to subsection (c) demonstrates to us that although the legislature did not intend for defendants who sell drugs within certain school zones to be sentenced in a higher range of punishment, it intended for all of them to at least serve the entire minimum sentence in the appropriate range. Subsections (b)(3) and (c) are not contradictory, and subsection (b)(3) does not supercede subsection (c). The appellant is not entitled to relief.

## B. Sufficiency of the Evidence

The appellant contends that the evidence is insufficient to support the convictions because the State failed to prove that the substances tested by the TBI were cocaine. Specifically, he argues that Agent Parmenter "irrationally" testified that no differences existed between the standard cocaine graph and the graphs created by the mass spectrometer when such differences clearly existed. He also contends that the State failed to prove that the distance between the crimes and the preschool was less than one thousand feet. In support of his argument, he notes that Officer Thayer testified that he did not know when the police department acquired the measuring wheel, that he never read any instructions for proper use of the wheel, and that he did not know if the wheel was ever calibrated. We conclude that the appellant is not entitled to relief.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

As stated previously, Tennessee Code Annotated section 39-17-417(a)(3) prohibits a person from knowingly selling a controlled substance, such as cocaine. If a person sells one-half gram or more of cocaine, the offense is a Class B felony. See Tenn. Code Ann. § 39-17-417(c)(1). Furthermore, the DFSZA creates a "buffer zone" of one thousand feet around schools. See Tenn. Code Ann. § 39-17-432(b)(1).

The appellant contends that the evidence is insufficient to support the convictions because Agent Parmenter's testimony that the graphs generated by the mass spectrometer for the substances in this case did not differ from the standard graph generated for pure cocaine was incorrect. Although the graphs in question were admitted into evidence at trial, they were not included in the record on appeal. In fact, the only exhibit included in the appellate record is the appellant's presentence report. It is the appellant's duty to prepare a record which conveys a fair, accurate, and complete record on appeal to enable meaningful appellate review. See Tenn. R. App. P. 24(a) (providing that the record on appeal shall consist of the original exhibits filed in the trial court). The appellant created an "APPENDIX TO APPELLANT'S BRIEF," containing various photocopies of trial exhibits, including photocopies of photographs, Agent Parmenter's forensic chemistry reports, and the graphs generated by the mass spectrometer. However, "appendices to briefs do not constitute evidence to be considered in the review of a case." Best v. State, 708 S.W.2d 421, 423 (Tenn. Crim. App. 1985).[1] Without the graphs introduced into evidence at trial, we are unable to address the appellant's argument. The issue has been waived.

The appellant also contends that the State failed to prove that he sold the cocaine within one thousand feet of the preschool. Officer Thayer testified that he used a measuring wheel to measure the distance between the location of the drug transactions and the preschool at First Methodist Church and that the distance was eight hundred eighty-eight feet. He also testified that an investigator from the public defender's office measured the distance, using a slightly different route, and that the distance was eight hundred seventy feet. The defense questioned Officer Thayer about his training to use the wheel and the wheel's calibration. The fact that the wheel was not calibrated goes to the weight and credibility of the evidence. See State v. Sean Rogers, No. 9-95-50, 1996 Ohio App. LEXIS 1715, at **9-10 (3d App. Dist., Apr. 24, 1996) (stating that "fact that the roll-a-wheel used to measure the distance was not calibrated . . . goes to the weight or credibility the jury may wish to assign to the evidence"). The jury obviously concluded that the State had demonstrated the drug transactions occurred within one thousand feet of the preschool. The evidence is sufficient to support the convictions.

## C. Bifurcated Trial

The appellant contends that the trial court, by denying his motion for a bifurcated trial, prevented him from presenting a defense. The State contends that the trial court properly denied the appellant's motion. We conclude that the appellant has waived this issue.

The record reflects that prior to trial, the appellant filed notice of intent to use an entrapment defense. According to the appellant's brief, he also filed a motion in limine, requesting that the trial court bifurcate his trial. The appellant claims that a bifurcated trial was warranted

---

[1]According to the appendix, the appellant compiled the photocopies of the trial exhibits pursuant to Rule 28, Tennessee Rules of Appellate Procedure. Rule 28 "allow[s] an appellant to file an appendix containing relevant portions of a record. However, the documents filed in an appendix must also be included in the record." State v. Kenneth Shane Story, No. M2005-02281-CCA-R3-CD, 2006 Tenn. Crim. App. LEXIS 621, *14 (Nashville, Aug. 9, 2006) (citation omitted).

to allow the defendant, if convicted of sale of cocaine, to present his prior criminal record regarding drugs to show that he had not in the past sold drugs in a school zone and had no propensity to do so and thus, support an entrapment defense as to the issue of sale of contraband in a school zone.

Although the appellant included a copy of the motion in the appendix to his brief, he failed to include in the appellate record the motion; a transcript of the motion hearing, if any; or the trial court's ruling on the motion. See Tenn. R. App. P. 24(a), (b). Moreover, as noted by the State, the appellant failed to cite to any authority regarding bifurcation or to support his position that a bifurcated trial denied him his constitutional right to present a defense. The appellant responds that he failed to cite to any authority because "this fact pattern is novel" and there is no case law directly on point. However, bifurcation itself is not novel. Moreover, although there may be no case law directly on point in this state, this court often turns to other jurisdictions for persuasive authority. See, e.g., State v. Denton, 938 S.W.2d 373, 377 (Tenn. 1996). The issue has been waived.

### D. Counterfeit Controlled Substance Instruction

The appellant contends that the trial court erred by failing to instruct the jury on the sale of a counterfeit controlled substance. He argues that the evidence justifies the instruction because a comparison of the standard cocaine graph with the graphs generated by the mass spectrometer reveals that the substances in this case were not cocaine. The State contends that the trial court did not err by failing to give the instruction because the sale of a counterfeit controlled substance is not a lesser included offense of the sale of a controlled substance and because the evidence did not warrant the instruction. We conclude that the trial court did not err by failing to instruct the jury on the sale of a counterfeit controlled substance.

"It is the duty of a trial judge to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986). In other words, "a defendant has a constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). Generally, the trial court must instruct the jury on the rules of law applicable to the issues that are fairly raised by the evidence adduced at trial. State v. Townes, 56 S.W.3d 30, 36 (Tenn. Crim. App. 2000), overruled on other grounds by State v. Terry, 118 S.W.3d 355 (Tenn. 2003). In determining whether jury instructions are erroneous, this court must review the charge in its entirety and invalidate the charge only if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law. State v. Vann, 976 S.W.2d 93, 101 (Tenn. 1998).

The appellant argues that the trial court should have instructed the jury on the sale of a counterfeit controlled substance because the graphs introduced into evidence at trial show that the substances alleged to have been sold were not cocaine. However, as noted previously, the appellant failed to include the graphs in the record on appeal. In any event, the appellant was not indicted for the sale of a counterfeit controlled substance, and he acknowledges that it is not a lesser included offense of the charged offense, sale of a controlled substance. Therefore, the trial court did not err

-11-

by failing to give the instruction to the jury.

## E. Facilitation Instruction

The appellant also contends that the trial court erred by failing to instruct the jury on facilitation as a lesser included offense of the charged offenses. The State contends that the appellant waived the issue because he did not request a facilitation instruction at trial and failed to raise the issue in his motion for new trial. The State also argues that the trial court's failure to instruct on facilitation does not rise to the level of plain error because the evidence established that the appellant sold crack cocaine to Kim Pierce and, therefore, consideration of the error is not necessary to do substantial justice. We agree that the appellant has waived the issue and that he is not entitled to plain error relief.

As noted by the State, the appellant failed to request a facilitation instruction at trial. Tennessee Code Annotated section 40-18-110(c) provides that a party's failure to request in writing an instruction on a lesser included offense results in a waiver of the issue on appeal. Furthermore, our supreme court has concluded that "the waiver of a lesser-included offense for purposes of plenary appellate review is constitutionally permissible." State v. Page, 184 S.W.3d 223, 230 (Tenn. 2006). Nevertheless, the court stated that appellate courts may review the issue under the plain error doctrine. Id. at 230.

Tennessee Rule of Criminal Procedure 52(b) provides that this court may address "[a]n error which has affected the substantial rights of an accused . . . at any time, even though not raised in the motion for a new trial . . . where necessary to do substantial justice." See also Tenn. R. Evid. 103(d). We may only consider an issue as plain error when all five of the following factors are met:

> (a) the record must clearly establish what occurred in the trial court;
> (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected;
> (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted); see also State v. Smith, 24 S.W.3d 274, 283 (Tenn. 2000) (adopting the Adkisson test for determining plain error). Furthermore, the ""plain error" must be of such a great magnitude that it probably changed the outcome of the trial.'" Adkisson, 899 S.W.2d at 642 (quoting United States v. Kerley, 838 F.2d 932, 937 (7th Cir. 1988)). "In applying the lesser-included offense doctrine, three questions arise: (1) whether an offense is a lesser-included offense; (2) whether the evidence supports a lesser-included offense instruction; and (3) whether an instructional error is harmless." State v. Allen, 69 S.W.3d 181, 187 (Tenn. 2002).

Facilitation is a lesser included offense of the charged offenses under the Burns test, part (c)(1). See State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999). We must now determine whether

the evidence supports an instruction on facilitation. Facilitation of a felony occurs when a defendant knows that "another intends to commit a specific felony" and "knowingly furnishes substantial assistance" in committing that felony. Tenn. Code Ann. § 39-11-403(a) (also directing that the facilitating defendant is one who lacks "the intent required for criminal responsibility"). The evidence in the record before us shows that on January 18, 2006, Kim Pierce telephoned the appellant. She spoke with Tasha and told Tasha that she wanted to buy eighty dollars worth of crack cocaine. Tasha told Pierce that the appellant was on his way. When the appellant did not arrive in a timely manner, Pierce telephoned again and spoke with him. The appellant arrived in a green Thunderbird, and Investigator Langford saw Pierce approach the appellant's car and give him eighty dollars in exchange for crack cocaine. On January 25, 2006, Pierce telephoned the appellant, spoke with him, and told him that she wanted to buy another eighty dollars worth of crack cocaine. Officer Thayer witnessed the appellant arrive driving a red Dodge Neon. He saw Pierce approach the appellant's car and saw Pierce give the money to the appellant in exchange for cocaine. Although the defense theorized that the appellant merely delivered the drugs to Pierce for Tasha, "[t]he evidence, not the theories of the parties, controls whether an instruction is required." Allen, 69 S.W.3d at 188. Based on the evidence in the record for our review, we conclude that the proof did not support an instruction on facilitation.

## F. Improper Closing Statement

The appellant claims that the prosecutor made an improper statement during closing arguments. The appellant acknowledges that while the prosecutor's comment does not constitute reversible error, the comment, along with the other errors that occurred, warrants a reversal of his convictions. The State contends that the prosecutor's comment, while improper, was not prejudicial. We conclude that the appellant is not entitled to relief.

During the State's closing argument, the prosecutor referred to defense counsel's cross-examination of Agent Parmenter and stated that defense counsel's "trying to confuse you with some numbers." Defense counsel objected, and the trial court sustained the objection. The prosecutor apologized, and the State's closing argument resumed.

It is well-established that closing argument is an important tool for both parties during a trial; thus, counsel is generally given wide latitude during closing argument, and the trial court is granted wide discretion in controlling closing arguments. See State v. Carruthers, 35 S.W.3d 516, 577-78 (Tenn. 2000) (appendix). "Notwithstanding such, arguments must be temperate, based upon the evidence introduced at trial, relevant to the issues being tried, and not otherwise improper under the facts or law." State v. Goltz, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003). "The prosecution is not permitted to reflect unfavorably upon defense counsel or the trial tactics employed during the course of the trial." State v. Garner Dwight Padgett, No. M2003-00542-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 938, at *34 (Nashville, Oct. 21, 2004).

"In determining whether statements made in closing argument constitute reversible error, it is necessary to determine whether the statements were improper and, if so, whether the impropriety

affected the verdict." State v. Pulliam, 950 S.W.2d 360, 367 (Tenn. Crim. App. 1996).  In connection with this issue, we must examine the following factors:

>(1) the conduct complained of viewed in context and in light of the facts and circumstances of the case[;]
>
>(2) the curative measures undertaken by the court and the prosecution[;]
>
>(3) the intent of the prosecutor in making the statement[;]
>
>(4) the cumulative effect of the improper conduct and any other errors in the record[; and]
>
>(5) the relative strength or weakness of the case.

Id. at 368 (quoting Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)).

Turning to the instant case, the prosecutor's comment was brief, and there is no evidence he intended to unduly prejudice the appellant by his remarks.  Moreover, although the trial court gave no curative instruction to the jury, the appellant did not ask for an instruction.  We have found no other errors, and, based upon the record on appeal, the State's case was strong.  Therefore, we conclude that the appellant is not entitled to relief.

## G.  Recusal

Next, the appellant claims that the trial court erred by failing to recuse itself from the case because the trial judge was a member of the First Methodist Church.  The appellant alleges that the trial judge, therefore, had "inside information regarding crucial evidence in this cause" that required him to recuse himself sua sponte.  The State argues that the appellant waived this issue because he failed to object pretrial or at trial and that, in any event, nothing in the record indicates that the trial judge had any personal knowledge about the disputed facts, that his impartiality was questionable, or that he exhibited any personal bias or prejudice.  We conclude that the appellant is not entitled to relief.

The appellant first raised this issue in his motion for new trial.  At the hearing on the motion, the trial judge stated, "I am a member of First Methodist Church.  This offense was not an offense against the church.  I really see no reason for me to recuse myself and no request was made and I see no prejudice at all."  The appellant argues on appeal that recusal was necessary because the judge made immediate rulings in favor of the State without requiring the State to lay the proper foundations.  As an example, he contends that during Officer Thayer's direct testimony, the trial court allowed Officer Thayer to testify, over the appellant's objection and without any foundation, about his personal knowledge that the church operated a preschool or daycare.

-14-

"A judge shall disqualify himself . . . in a proceeding in which the judge's impartiality might reasonably be questioned." Tenn. Sup. Ct. R. 10, Canon 3E(1). "[A] trial judge should grant a recusal whenever the judge has any doubts about his or her ability to preside impartially." Alley v. State, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994). However, recusal also is necessary "when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." Id. This objective standard "'takes into account that disqualification is required if there is an appearance of partiality to the reasonable observer, and it precludes a judge from avoiding recusal merely by avowing his or her impartiality.'" State v. Conway, 77 S.W.3d 213, 225 (Tenn. Crim. App. 2001) (quoting State v. Connors, 995 S.W.2d 146, 149 (Tenn. Crim. App. 1998)); see also State v. Schiefelbein, 230 S.W.3d 88, 136-37 (Tenn. Crim. App. 2007). "Adverse rulings by a trial court are not usually sufficient grounds to establish bias." Alley, 882 S.W.2d at 821. The "issue to be determined is not the propriety of the judicial conduct of the trial judge, but whether he committed an error which resulted in an unjust disposition of the case." State v. Hurley, 876 S.W.2d 57, 64 (Tenn. 1993); State v. Boggs, 932 S.W.2d 467, 472 (Tenn. Crim. App. 1996). A trial judge's refusal to grant a motion to recuse will be reviewed under an abuse of discretion standard. State v. Raspberry, 875 S.W.2d 678, 681 (Tenn. Crim. App. 1993).

The record does not reveal when the appellant learned about the judge's being a member of the church. Although the appellant first raised the issue in his motion for new trial, he does not allege that he learned about the judge's potential conflict after the trial. The failure to file a motion to recuse prior to trial waives the issue. See Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997). In any event, we have carefully reviewed the trial transcript and nothing indicates that the trial court was biased against the appellant. Therefore, he is not entitled to relief.

## H. Cumulative Errors

Finally, the appellant contends that the cumulative effect of the errors in this case warrants a reversal of his convictions. We find no merit to this claim.

## III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE

-15-